**Daryl E. RATLIFF, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

Nos. 92–5391, 92–5515.

United States Court of Appeals, Sixth Circuit.

Submitted Jan. 21, 1993.

Decided July 30, 1993.

Daryl Ratliff (pro se, briefed).

Karen K. Caldwell, U.S. Atty., David Bunning, Asst. U.S. Atty. (briefed), Office of U.S. Atty., Lexington, KY, for respondent-appellee.

Before: KEITH and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

## I. Introduction

On March 2, 1990, a criminal information was filed which charged Ratliff with mail fraud and with knowingly filing false, fictitious and fraudulent claims against the United States, in violation of 18 U.S.C. §§ 1341 and 287. The information charged that, during his tenure as Deputy Commissioner for the Department of Labor, Office of Workmen's Compensation, Division of Black Lung Benefits, Ratliff engaged in a scheme in which he filed false claims for Coal Mine Worker's Compensation Benefits in the names of various individuals who were not entitled to benefits. The information further alleged that from December of 1983 through

June of 1986, Ratliff's scheme secured $230,671.19 from the United States Treasury in fraudulent benefits.

A previously executed plea agreement was filed with the information. The plea agreement did not specify the offenses committed, but did indicate that Ratliff would plead guilty to a two-count information charging a violation of Title 18, United States Code, the specific sections to be determined at a later date. Ratliff also promised to make full restitution in an amount to be determined. In a later-executed "Restitution Agreement" filed simultaneously with the plea agreement and information, Ratliff agreed to pay "restitution to the United States of America in the amount of $230,671.19, plus interest at the rate of ten (10%) to begin accumulating on the date that the sentence is imposed for the offense charged."

On May 3, 1990, Ratliff appeared before the district court for sentencing. The government advised the court that Ratliff had arranged for restitution in full as agreed by the parties. ' The district court then sentenced Ratliff to three (3) years on each of the two counts in the information to run concurrently, and fined Ratliff an additional $5,000.00 on each count. The court also ordered Ratliff to make restitution to the United States in the amount of $280,671.00, which included the total loss to the government and an additional $50,000.00 for the cost of investigating Ratliff's fraudulent scheme. Ratliff did not appeal his sentence.

On August 31, 1990, Ratliff moved for a reduction of his sentence pursuant to Fed. R.Crim.P. 35(b), which motion was denied. On April 11, 1991, Ratliff filed this motion to vacate, set aside, or correct his sentence while in federal custody, pursuant to 28 U.S.C. § 2255. In his § 2255 motion, Ratliff moved to vacate the order requiring the $50,000 additional restitution. He also moved to

reduce the fines imposed. Finally, Ratliff moved to correct information in his Presentence Investigation Report ("PSI"), regarding his financial status.[1] The magistrate judge recommended denial of Ratliff's motion on all grounds, and the district court adopted that recommendation and denied the motion on March 5, 1992.

Proceeding *pro se*, Ratliff appeals numerous issues related to the denial of his § 2255 motion.[2] For the following reasons, we affirm in part and reverse in part.

## II. The Award of Restitution

Ratliff was ordered to pay restitution to the U.S. Department of Labor under 18 U.S.C. § 3663, the Victim and Witness Protection Act of 1982 (hereinafter "VWPA"). Ratliff challenges this award of restitution on several grounds.

■ Before proceeding to the merits of Ratliff's arguments, we must first address the government's contention that Ratliff has waived his right to challenge the award of restitution on collateral attack, absent a showing of cause to excuse his failure to appeal the issue and actual prejudice. *United ed States v. Frady*, 456 U.S. 152, 167–168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In order to satisfy this standard, a defendant must "shoulder the burden of showing, not merely that the errors at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage...." *Id.* at 170, 102 S.Ct. at 1596 (emphasis original). The *Frady* cause and prejudice standard applies to a defendant who pleads guilty and first asserts a claim for relief in a collateral proceeding. *See Bateman v. United States*, 875 F.2d 1304, 1307 (7th Cir.1989) (per curiam); *see also United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984).

1. Although Ratliff's objections to information contained in his PSI were raised in a separate motion ostensibly made pursuant to Fed.R.Civ.P. 32, the district court properly construed that motion as a supplement to Ratliff's § 2255 Motion to Vacate.

2. Consolidated with the appeal of the denial of Ratliff's § 2255 motions is Ratliff's appeal from

the district court's order granting leave to the government to take his deposition in prison. However, Ratliff does not address that appeal in his brief to this court. Therefore, Ratliff's appeal from the district court's order is considered abandoned and will not be reviewed. *See McMurphy v. City of Flushing*, 802 F.2d 191, 198–99 (6th Cir.1988).

■ The magistrate judge found that "at no time has Defendant addressed the issue of why he did not appeal his sentence." Although it is true that the issue of cause and prejudice is not discussed in detail by this *pro se* petitioner, he did allege in his objections to the recommendation of the magistrate judge and in his brief to this court that he asked his attorney to appeal the restitution award but was rebuffed. Federal courts have long recognized that the pleadings of a *pro se* litigant must be construed liberally. *See e.g. Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam); *Williams v. Browman,* 981 F.2d 901, 903 (6th Cir.1992). Ratliff's allegations regarding the conduct of his appellate counsel bear directly on the issue of cause and prejudice.

■ The ineffective assistance of counsel constitutes cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). To establish the ineffective assistance of appellate counsel, it must be shown that counsel's performance was deficient and that the deficient performance was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir.1985). A refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the *Strickland* test and would clearly constitute cause for Ratliff's failure to appeal the award. Although the absence of a hearing on the issue of cause and prejudice makes it more difficult for this reviewing court to determine whether a sufficient showing has been made, it is obvious that Ratliff will suffer actual prejudice if his claim is not heard, because he will be forced to pay an award of restitution which could not otherwise be upheld. In light of the facially valid showing of cause and prejudice, this court will proceed to review the merits of Ratliff's claims regarding the restitution award.

■ On the merits, Ratliff argues that the costs of investigating and prosecuting an of-

fense are not direct losses for which restitution may be ordered under the VWPA. We agree.

■ Restitution is limited to losses caused by the specific conduct that is the basis of the offense of conviction. *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).[3] In *United States v. Salcedo–Lopez,* 907 F.2d 97, 98 (9th Cir.1990) (per curiam), the Ninth Circuit held that payments made during the course of investigating the defendant's illegal activities are not recoverable under the Act:

> Any loss for which restitution is ordered must result directly from the defendant's offense. *United States v. Kenney,* 789 F.2d 783, 784 (9th Cir.1986) (citing *United States v. Tyler,* 767 F.2d 1350, 1351 (9th Cir.1985)). The costs of investigating and prosecuting an offense are not direct losses for which restitution may be ordered. *Id.* (salaries of bank employees who testified at trial are costs of prosecution too remote to form the basis for restitution); *see Tyler,* 767 F.2d at 1352 (§ 3651, predecessor to § 3663, does not authorize award of restitution for decline in value of stolen timber held for evidentiary purposes); *United States v. Vaughn,* 636 F.2d 921, 923 (4th Cir.1980) ("costs of investigation result only indirectly from the offense of income tax violation").

The Fourth Circuit has likewise held that restitution may not be awarded under the VWPA for investigation or prosecution costs incurred in the offense of conviction. *See United States v. Vaughn, supra.* Although prosecution costs did form the basis of an order of restitution in *United States v. Hand,* 863 F.2d 1100 (3rd Cir.1988), *Hand* was the rare case where certain prosecution costs were losses directly caused by the offense of conviction.

Patricia Hand was a juror in a multi-defendant criminal trial who admitted to impermissible contact with one of the defendants during the criminal trial. The government ultimately lost five original jury verdicts of

---

**3.** Although the VWPA was amended to expand the scope of restitution for some offenses following the Supreme Court's decision in *Hughey,* the amended provision does not apply to Ratliff. *See United States v. Jewitt,* 978 F.2d 248, 253 (6th Cir.1992).

guilt and suffered a mistrial as to a sixth defendant as a direct result of Hand's conduct. Hand was prosecuted for her conduct and pleaded guilty to contempt of court. On appeal, the Third Circuit affirmed an award of restitution against Hand which consisted of prosecution costs from the prior criminal trial. Although the court noted that prosecution expenses are ordinarily "too remote to form the basis for restitution," *see United States v. Kenney,* 789 F.2d 783 (9th Cir. 1986), *cert. denied,* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986), Hand's offense directly resulted in a loss of prosecution costs from the prior criminal trial which could be awarded as restitution. *Hand, supra,* 863 F.2d at 1105. Consistent with *Salcedo–Lopez* and *Vaughn,* no additional restitution was awarded for the costs of investigating or prosecuting Hand's improper conduct.

In this case, the award of restitution in the amount of $230,671.19, which amount was stipulated by the parties to be the sum embezzled by Ratliff, was proper. However, the sentencing court erred by awarding $50,000 as an additional amount of restitution, because that amount was based solely on the costs of investigating and prosecuting Ratliff's conduct and was not a direct loss for which restitution may be awarded under the VWPA. Therefore, we affirm the award of restitution in the amount of $230,671.19, but reverse the additional award of $50,000.

■ Although Ratliff additionally argues that restitution should not have been awarded to the United States Department of Labor, we note that both the plea agreement and the restitution agreement specified that restitution was to be paid to "the United States of America." The sentencing court's order of restitution to the Department of Labor was not error because the government can be a "victim" under the VWPA. *See e.g., United States v. Streebing,* 987 F.2d 368 (6th Cir.1993) (Social Security Administration); *United States v. Smith,* 944 F.2d 618 (9th

Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992) (Federal Savings and Loan Insurance Corporation); *United States v. Helmsley,* 941 F.2d 71 (2d Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992) (Internal Revenue Service).

■ Ratliff also attacks the restitution award on the grounds that the sentencing court failed to consider his ability to pay the award, and alleges that the $50,000 award of costs included unnecessary expenses. Because we reverse the award of $50,000 on other grounds, and because Ratliff expressly agreed to pay the remainder of the award in the plea agreement and restitution agreement, we need not consider these arguments further.[4]

### III. Information in the PSI

■ Ratliff also complains that the sentencing court erred in failing to permit him to review his Presentence Investigation Report prior to imposing sentence. Ratliff now contends that false information regarding his net worth was included in the PSI.

Fed.R.Crim.P. 32(c)(3), applicable to offenses committed prior to November 1, 1987, provides:

(A) At a reasonable time before imposing sentence the court shall permit the defendant *and* the defendant's counsel to read the report of the presentence investigation exclusive of any recommendation as to sentence. . . .

(emphasis added). The record indicates that defense counsel reviewed the original PSI and requested changes, but had an opportunity to review the amended PSI only at the sentencing hearing. Following his review of the amended PSI at the hearing, defense counsel voiced minor objections to that report, but did not contest any information regarding Ratliff's net worth. Ratliff asserts

---

4. Although Ratliff additionally argues that the court was limited by the Restitution Agreement itself to ordering restitution of $230,671.19 and a fine of $1,000 for a violation of 18 U.S.C. § 1341, these issues are not properly before this court because Ratliff did not raise them before the district court, either at sentencing or in this

§ 2255 proceeding. For the same reasons, we decline to address Ratliff's argument concerning the validity of a notice received from the Office of Personnel Management, Retirement and Insurance Group, which indicates that a portion of Ratliff's retirement annuity is being withheld to satisfy the debt owed by him to the government.

that he personally did not have the opportunity to review the PSI at all.

Although the district court specifically found that Ratliff had an adequate opportunity to bring to the court's attention any inaccuracies in the PSI, that finding is clearly erroneous. A review of the record reveals *no* evidence that Ratliff was given any opportunity to personally review the PSI, or that he and his attorney discussed the report.

In *United States v. Stevens*, 851 F.2d 140 (6th Cir.1988), this court held it error for a sentencing court to fail to determine that both the defendant and his counsel had the opportunity to read and discuss the presentence investigation report prior to sentencing, where that report contained false information. The sentence in *Stevens* was upheld in part because, unlike this case, it was clear from the record that the defendant had personally reviewed his PSI. In addition, the error in *Stevens* did not rise to the level of a due process violation because the record indicated that the sentencing court did not rely on the false information contained within the report in passing sentence. *Id.* at 143–44.

Unlike *Stevens*, the error here arguably rises to the level of a due process violation because a court is required to consider a defendant's ability to pay prior to awarding restitution under the VWPA, and there is no information in the record, other than the statement in the PSI as to Ratliff's net worth, on which the sentencing court might have based the additional $50,000 in restitution. However, our analysis is complicated by the fact that it is not entirely clear that the information relied upon was false.

The allegedly false statement on which the court relied represented Ratliff's net worth as $413,682.00. Without submission of specific evidence, Ratliff now contends that his net worth was substantially less than that amount. For a claim regarding the sentencing court's reliance on inaccurate information within a PSI to amount to a constitutional due process violation, "the defendant must raise grave doubt as to the veracity of the information and show that the court relied on that false information in determining the sentence." *United States v. Fry*, 831 F.2d 664, 667 (6th Cir.1987). Although the sentencing court clearly relied on the information, Ratliff has not met his burden of raising grave doubt as to the veracity of the information.

■ Because Ratliff has failed to show that the sentencing court relied on false information in a presentence report which he was not afforded the opportunity to review, he raises neither a Rule 32 violation which would require resentencing nor a due process claim which can be addressed in this § 2255 proceeding. *See United States v. Mandell*, 905 F.2d 970, 973–974 (6th Cir.1990). In addition, because any claim ultimately undermines only the validity of the additional $50,-000 restitution award which has been reversed on other grounds, any error committed by the sentencing court was harmless.

## IV. Fines

■ In addition to challenging the award of restitution and information in his PSI, Ratliff challenges one of the two fines imposed by the sentencing court. Ratliff pleaded guilty to a violation of 18 U.S.C. § 1341, which provides for a maximum fine of $1,000. However, the court fined Ratliff $5,000 for this offense. We find no error, because the sentencing court imposed the greater fine under the Criminal Fine Enforcement Act (CFEA), 18 U.S.C. § 3623, which permits fines of up to $250,000 per offense and applies to offenses committed between January 1, 1985 and November 1, 1987. As noted by the district court, the plea agreement executed by Ratliff provided that the maximum fine to be imposed would not exceed $500,000.00, which put Ratliff on notice that he could be fined up to $250,000 for each of the two counts to which he pleaded guilty under the CFEA.

## V. Conclusion

In sum, we affirm the award of restitution in the amount of $230,671.19, but reverse the district court and grant Ratliff's motion to vacate the additional award of restitution in the amount of $50,000. We affirm the denial of Ratliff's § 2255 motion in all other respects. In light of this disposition, we do not examine the district court's discretionary de-

cision not to hold an evidentiary hearing in this case.

RYAN, Circuit Judge, concurring in part and dissenting in part.

Although I join part IV of the majority opinion, and concur in the result reached in part III, I do not agree that Ratliff established "cause and prejudice" for failing to raise the restitution issue prior to filing this 18 U.S.C. § 2255 action. I must therefore dissent from what is written in part II. I also write separately to express my disagreement with the majority's analysis in part III.

### A.

I agree with the majority that the district court erred when it ordered Ratliff to pay, pursuant to 18 U.S.C. §§ 3663 and 3664, additional restitution of $50,000 to cover the costs of the investigation. Ratliff failed, however, to object to his sentence below, and he did not raise the issue on direct appeal. Almost a year after sentence was imposed, Ratliff filed for habeas corpus relief pursuant to 28 U.S.C. § 2255, in a motion to vacate, set aside, or correct sentence.[1] Consequently, as the majority points out, Ratliff was required to establish "cause and prejudice" for failing to raise the restitution issue below and on direct appeal. *See United States v. Frady,* 456 U.S. 152, 166–67, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982).

In *Frady,* the Supreme Court held that the proper standard for reviewing issues raised for the first time in a motion under section 2255 is the "cause and actual prejudice" standard. *Id.* Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show "cause" excusing his double procedural default and "actual prejudice" resulting from the error. *Id.* at 168, 102 S.Ct. at 1594–95. The majority concludes that Ratliff established both cause and prejudice. I agree that Ratliff can establish prejudice, that is, actual injury, *see*

*Frady,* 456 U.S. at 170, 102 S.Ct. at 1595–96, resulting from the district court's error in ordering restitution for the costs of the investigation and prosecution. I do not agree, however, that the record established "cause" to excuse Ratliff's failure to raise the issue at sentencing or on direct appeal.

The majority finds it significant that, in his objections to the magistrate judge's recommendation to deny section 2255 relief, Ratliff, a *pro se* appellant, claimed that he had asked his attorney to appeal the restitution order but was rebuffed. Construing Ratliff's *pro se* pleadings liberally, the majority concludes that Ratliff has thus argued that his lawyer's failure to appeal the restitution order amounted to "ineffectiveness" that "caused" the procedural default. Then the majority concludes that counsel's failure to appeal the restitution order established that counsel's representation was *constitutionally* ineffective and that, perforce, Ratliff has established "cause" for his failure to raise the restitution issue earlier. Even assuming that the majority correctly construes Ratliff's objections to the magistrate judge's recommendation as raising the argument that counsel's ineffectiveness caused Ratliff's procedural default, in my opinion Ratliff fails to meet the cause requirement under *Frady* because he fails to establish that counsel was *constitutionally* ineffective.

The majority is correct when it states that ineffective assistance of counsel may constitute "cause" under *Frady. See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). However, to meet the "cause" requirement of *Frady,* counsel's assistance must be tantamount to the denial of the assistance of counsel under the Sixth Amendment. The Supreme Court has stated that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486, 106 S.Ct. at 2644. The Court held:

raised that *argument,* for the first time, when he filed his objections to the magistrate judge's report that recommended that the district court deny § 2255 relief.

---

1. Although Ratliff moved, in his § 2255 motion, to vacate the $50,000 restitution order, he did not do so on the ground that 18 U.S.C. § 3663 did not allow the court to order restitution to cover the costs of the investigation. Ratliff

We think ... that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v Washington*, [466 U.S. 668, 690, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674 (1984),] we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.
*Id.* 477 U.S. at 488, 106 S.Ct. at 2645.

The entire ineffective assistance of counsel sufficient to constitute cause argument that the majority finds to have been raised in Ratliff's *pro se* pleadings is derived from the following statement in Ratliff's objection to the magistrate judge's recommendation:

Defendant asked his Counsel immediately after sentencing to appeal the $50,000.00 restitution. Defendant was asked by Counsel "on what grounds?" At that time *Defendant* was not competent to answer and remained incompetent to answer during the limitations of a timely appeal.

(Emphasis added.) Ratliff's claim, liberally construed, presents, at most, an allegation of attorney error. There is absolutely no evidence in the record that "some objective factor external to the defense impeded counsel's efforts" to raise the restitution claim prior to this section 2255 action.

In *Strickland*, the Supreme Court established a two-part inquiry into whether a defendant was denied his Sixth Amendment right to effective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors

so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The proper standard for evaluating attorney performance is that of reasonably effective assistance of counsel considered "in light of all the circumstances." *Id.* at 690, 104 S.Ct. at 2066. A reviewing court's scrutiny of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Thus, under *Strickland*, ordinary oversight, simple miscalculation, and bad judgment are not sufficient to establish that counsel was constitutionally ineffective.

The standards set forth in *Frady* and in *Strickland* are difficult to meet. Nevertheless, in spite of the absence of a hearing by the district court on the issue of ineffective assistance of counsel,[2] the majority concludes that "[a] refusal to appeal an erroneous restitution award, which award would have been subject to reversal on appeal, would meet the *Strickland* test and would clearly constitute cause for Ratliff's failure to appeal the award." Majority op. at 1026. I do not agree that the record presently before this court is adequate to overcome the "strong presumption" of *Strickland*. It may be that counsel's failure to appeal the restitution issue amounted to ineffectiveness. Likewise, it may be that counsel had a plausible expla-

---

**2.** The general rule in this circuit is that "a defendant may not raise a claim of ineffective assistance of counsel for the first time on direct appeal, since such a situation generally precludes an opportunity to develop and include evidence bearing on the merits of the allegations of ineffective assistance in the record." *United States v.*

*Smith*, 981 F.2d 887, 894 (6th Cir.1992). Most circuits would permit a defendant to raise his ineffective assistance of counsel claim in a postconviction proceeding under 28 U.S.C. § 2255. *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990).

nation for not doing so. That is what a hearing in the trial court on ineffectiveness claims is intended to reveal. There simply is no record before this court regarding the quality of assistance Ratliff received from trial counsel on the restitution issue. Thus, I do not believe that this court is free to conclude, in the absence of a record developed at an evidentiary hearing, that counsel's assistance was so deficient as to amount to constitutional ineffectiveness under the demanding *Strickland* standard.[3]

Assuming that the majority correctly concluded that Ratliff, in his objections to the magistrate judge's recommendation to deny section 2255 relief, suggested that his counsel's ineffectiveness "caused" his procedural default, I believe it more appropriate for this court to remand the case to the district court with instructions to hold a hearing to determine: 1) whether the assistance provided by Ratliff's counsel was constitutionally deficient; and 2) whether the ineffectiveness of Ratliff's counsel constituted "cause" under *Frady* to excuse Ratliff's failure to raise the issue of restitution in earlier proceedings.

Therefore, I must respectfully dissent from that part of the majority's opinion which concludes that Ratliff met the "cause" requirement of *Frady.*

**B.**

As previously stated, although I agree that the majority reached the correct result in part III of its opinion, I cannot join in the rationale.

The majority concludes that the district court clearly erred when it found that Ratliff had adequate opportunity to bring any inaccuracies about his net worth in the presentence report to the sentencing court's attention. Majority op. at 1027. But according to the majority, Ratliff fails to show that the net worth information relief upon by the sentencing court was false. Majority op. at 1028. Therefore, the majority concludes, Ratliff "raises neither a Rule 32 violation which would require resentencing nor a due process

claim which can be addressed in this § 2255 proceeding." Majority op. at 1028.

Ratliff, however, first raised the claim that the presentence report contained inaccurate information about his net worth in his Rule 32 motion, a motion in which Ratliff asked the sentencing court to correct the presentence report. Ratliff filed this Rule 32 motion after he filed his section 2255 motion, so the district court properly construed the Rule 32 motion as an addendum to Ratliff's section 2255 motion. Because Ratliff raises this argument for the first time in a section 2255 motion, under *Frady,* he must establish "cause and prejudice" for failing to raise the issue below or on direct appeal. *See Frady,* 456 U.S. at 166–67, 102 S.Ct. at 1593–94. Ratliff shows neither cause nor prejudice; therefore, I would hold that the district court should not have considered this claim when determining Ratliff's section 2255 motion. Furthermore, I disagree with the majority's statement that there is no evidence that Ratliff had an opportunity to review the presentence report with his attorney. *See* majority op. at 1027. The record indicates that Ratliff reviewed and read the original presentence report, discussed the report with his attorney, and suggested modifications. At the request of Ratliff's counsel, the report was modified. Although the record indicates that Ratliff did not read the *modified* presentence report prior to sentencing, the information regarding Ratliff's net worth was not altered in the new presentence report. Consequently, the record indicates that Ratliff had adequate opportunity to read and discuss with his attorney (and an opportunity to suggest modifications to) the portion of the presentence report that determined Ratliff's net worth.

For all of these reasons, I respectfully dissent from the conclusions reached in part II of the majority opinion and the reasoning in part III. I concur, however, in the balance of the majority opinion except with the order vacating the $50,000 restitution order.

---

**3.** The absence in the majority opinion of a single citation to any case from this circuit for the proposition that restitution may not include the costs of investigation strongly suggests that Ratliff's counsel's failure to appeal on that ground may not amount to *Strickland* constitutional ineffectiveness.

As to that, I would remand to the trial court for further proceedings.