**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dwayne SELLERS, Defendant–Appellant.**

**No. 98–3216.**

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2001.

469

Before KRUPANSKY,
BATCHELDER, and MOORE, Circuit
Judges.

PER CURIAM.

The defendant-appellant, Dwayne Sellers ("Sellers"), has assailed his ninety-nine month imprisonment sentence for conspiracy to possess with intent to distribute, and to distribute, cocaine base ("crack"). He has contended that the district court prejudicially erred by failing to directly inquire at his sentencing hearing whether he had read his Pre–Sentence Report ("PSR") and had discussed it with his attorney; and that the sentencing court should have awarded him a downward sentencing departure because the court had purportedly misled him concerning his sentencing exposure during his prior plea acceptance hearing.

Sellers, a professional crack cocaine dealer affiliated with a Youngstown, Ohio, association of street hoodlums known as the "5150 Gang," confronted a federal

grand jury indictment on ten related crack cocaine counts, namely one charge of conspiracy to possess with intent to distribute, and to distribute, crack cocaine, between June 21, 1996 and May 28, 1997, plus nine substantive counts of cocaine base distribution within that period. Pursuant to a written Fed.R.Crim.P. 11 plea agreement, Sellers pleaded guilty to the conspiracy count, in exchange for dismissal of the nine substantive charges. The plea contract specified that the defendant faced a statutory mandatory minimum sentence of five years, and a potential maximum penalty of forty years, of incarceration. *See* 21 U.S.C. §§ 841(b)(1)(B) & 846. That memorial further posited that "[t]he defendant understands that the recommendations contained herein are not binding on the Court, and the Court may impose any sentence provided for by law. . . . The defendant understands that sentencing is within the discretion of the Court and that the Court is required to consider any and all applicable sentencing guideline provisions."

The defendant conceded, via the plea agreement, that at least five but less than twenty grams of cocaine base should be charged against him, which triggered a base offense level of 26. United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") § 2D1.1(c)(7) (Drug Quantity Table). The United States agreed to recommend a three-point deduction for acceptance of responsibility, thereby reducing Sellers' offense level to 23. The plea compact additionally memorialized that "[t]he defendant understands that the defendant's criminal history will be determined by the Court after an investigation by the Federal Probation Department." Finally, the agreement stated that "[t]he defendant agrees not to seek a downward departure from the applicable sentencing guidelines and the government agrees not to seek an upward departure from the applicable sentencing guidelines[.]"

On December 8, 1997, the trial judge conducted a plea acceptance hearing. In open court, the prosecutor summarized, among other things, the above-described provisions of the plea agreement. Thereafter, defense counsel concurred with the government's summation of the plea agreement's terms. In response to an inquiry by the district judge, the defendant's counselor stated that had discussed with his client, "on numerous occasions" prior to the defendant's execution of the agreement, the constitutional rights which would be affected by the agreement. Those conferences included a session which lasted between one and one-half to two hours. The defense lawyer represented that Sellers had volitionally assented to all of the terms of the plea agreement.

The court then specifically queried the defendant to ensure that he understood the stipulations of his plea bargain. The defendant, who in 1994 had completed a semester in the criminal justice program at Youngstown State University, expressed comprehension that he would sustain a prison term of at least five years but not more than forty years. The trial court unequivocally cautioned the defendant that "[n]o one can promise you in advance exactly what your sentence will be." The trial judge, with the aid of the Assistant United States Attorney, explained to the defendant that his ultimate sentence would depend upon his criminal history calculation, which had not been performed at that point in time:

> THE COURT: Then it [the plea agreement] says that your criminal history has to be determined by the Court after an investigation by the federal probation department, and it says that you understand that.

Now, you know, sir, what your criminal history is. I don't know and I don't want to know today. Your lawyer knows what your criminal history is if you have been truthful with him and told him everything. Have you?

THE DEFENDANT: Yes.

THE COURT: Okay. That means that you and he together can use the law and try and figure out where would you come down on the guidelines if you went through [with] a guilty plea here, what it really [would] translate to. *I can't promise what it will translate into because I don't know your criminal history and I don't know what the probation department investigation would show about that or how it would be calculated. We will do that later.*

But I'm going to ask Mr. Bamberger [the Assistant United States Attorney] and your lawyer, or one or the other, [to] put right here on the record what are we talking about if these calculations go on. If we take three levels off of this and it takes you down, what are we talking about in terms of how much time you might spend?

Mr. Bamberger.

MR. BAMBERGER: Your Honor, if it please the Court, with the reduction of three levels down to an adjusted base offense level of 23, the guidelines would bring him out, if his criminal history category were one, at 46 to 57 month range.

However, the statutory mandatory minimum would come into play, so his best case scenario essentially is a 60 month sentence.

In my discussions with [defense] counsel, it is estimated that the defendant's criminal history may be as high as five, maybe four. In that case at a level 23, criminal history five which is the worst case scenario, based upon our discus-

sions his range is 84 to 105 months. If his criminal history is four, the range is 70 to 87 months.

So essentially his range—

THE COURT: 60 to 105.

MR. BAMBERGER:—is 60 to 105 months.

THE COURT: That's a big range, okay, but you understand that in order to get into the—the 60 month sentence is the minimum under the statute, you know that. So you can't get under that. *But it depends really on what your criminal history is,* and you and your lawyer have to take what you know about your criminal history and apply it to the law and come up with the best guesstimate you can.

What Mr. Bamberger is saying is assume the very worst, we don't know that you will fall in that, but if it's the very worst, you are in a range of 84 to 105 months, okay? If you are four, the range is 70 to 87, okay? You got that now?

THE DEFENDANT: Yes.

(Emphases added).

On January 16, 1998, the probation department completed its presentence report (PSR) for Sellers. Based upon Sellers' eventful criminal past, the PSR reflected that he had accumulated thirteen criminal history points under U.S.S.G. § 4A1.1, which earned him admission into the highest possible criminal history category under the Guidelines, to wit, category VI. When category VI is matched with Sellers' offensive level of 23, the Guidelines mandate a sentencing range of 92 to 115 months in penal confinement. U.S.S.G. § 5A (Sentencing Table). Defense counsel received a copy of the PSR shortly after its completion, and the defendant, who had been released on bond pending sentencing, had ample opportunity to review and dis-

cuss it with his lawyer. The defense submitted no written objections to anything stated in the presentence report prior to the sentencing hearing.

However, during Sellers' February 17, 1998 sentencing hearing, defense counsel orally moved for a downward sentencing departure anchored in the allegedly unanticipated placement of the defendant in criminal history category VI:

> [THE COURT]: What I would like to do first is inquire whether you have any objections to the [presentence] report that was filed. There were none listed in the revised report.
>
> MR. PALOMBARO [defense counsel]: That's correct, your Honor, however, I would like to address the Court at the appropriate time relative to the criminal history.
>
> THE COURT: This would be the proper time.
>
> MR. PALOMBARO: ... With regard to the investigation of his criminal history category, I have on my [own] time reviewed the juvenile records and they are correct, and the Youngstown Municipal Court records, and they are correct. However, every crime that Mr. Sellers had pled guilty to or was convicted of was a misdemeanor and very few of them of the misdemeanor one category in the State of Ohio.
>
> *I believe by reviewing the presentence report* that Mr. Sellers is not your atypical [sic—typical?] Criminal History Category 6 defendant. I have represented many, many defendants that have been identified as a Category 6, and I believe that the criminal history of Mr. Sellers is overrepresented by the calculations as done by the Adult Probation Department.
>
> I believe that this Court is going to see that in practically every case in the sentencings that come before this Court.[1] As a result, Mr. Sellers I believe is looking at a sentencing range of I believe 92 months to 115 months. I may be off but I think I'm right in that area.
>
> THE COURT: No, that's right.
>
> MR. PALOMBARO: Because of the amount of cocaine attributed to Mr. Sellers in this operation and the number of sales that he did make to undercover agents, he's looking at a mandatory minimum of five years under the statute for which he pled guilty.
>
> I am asking the Court to, pursuant to the guidelines, to take a look at this young man's Criminal History Category, his youth, and draw upon the Court's experience with a Category 6 defendant, and if possible to depart downward in the Criminal History Category so that this young man can be sentenced to as close to the statutory minimum of five years that the Court would deem proper in this matter. ...
>
> However, *by looking at this report* and applying the law, I believe that this young man basically is not getting a fair shake relative to the true intention of the guidelines.
>
> Thank you.
>
> THE COURT: Do you [the prosecutor] want to respond? This is a request for a downward departure.

(Emphases added).

The government responded to the defense motion by citing the plea agreement stipulation that neither signatory would

---

1. In the context of the entire sentencing transcript, it appears that defense counsel was referring in this sentence to Sellers' co-defendants in the crack distribution conspiracy indictment.

seek a downward sentencing departure, although the United States conceded that neither side had then anticipated that Sellers ultimately would land within criminal history category VI. Although the trial court acknowledged the agreement's referenced reciprocal promise, it nonetheless considered the merits of Sellers' downward departure motion. The court, addressing in succession each of the defendant's prior convictions, explained to him the method used to compute his criminal history score. The trial judge then urged Sellers to consult with his lawyer regarding his criminal history rank, and subsequently explained her rationale for denying departure from the sentencing range which had been recommended by the probation office:

Throughout these proceedings you may have questions as we're going along, and *I want you to stop me anytime you need to talk to your lawyer. And this might be one of the times you want to do that* because I see nothing here that would justify me, under the law, in departing downward in your case.

There are things that are unfortunate about this because you're a pretty young person. You're 21 years old and you've had an awful lot of contact with the criminal justice system. You've done a lot of living. You've got a lot of things here that have piled up in your life in lots of ways.

When I look at your personal history and see that you've got as many children as you have, most people at 21 aren't in that kind of position. So, you have eight children and you're 21 years old.

You have lots of conflicts with the law here starting back when you were pretty young and as we look at them, it's more than most people have . . . .

So I'm not going to grant a downward departure. I do want to get to some other things in the report and talk about some other things as we go along.

(Emphasis added).

Thereafter, the sentencing judge questioned the defendant about other information contained within the PSR. At no point during the sentencing colloquy did the defendant request an opportunity to converse with his attorney for any reason. Prior to sentencing, the court asked Sellers if he would like to say anything else, to which he replied, "No, ma'am." Defense counsel subsequently requested sentencing near the low end of the Guidelines range. The court then pronounced its sentence:

THE COURT: Okay. I think I have said some things as we have gone along that are the kind of things we look at. You're 21. It's a conspiracy to distribute and possess with intent to distribute cocaine. You've taken some responsibility for your action and gotten some credit for that.

You have got a very long criminal history, especially because you're only 21. These adjudications and convictions range from burglary and receiving stolen property to unlawful possession of a dangerous ordnance and resisting arrest and assault and criminal damage and domestic violence to driving without a license.

Then there are five drug cases. You have been using for a long time and it seems to me that what's happening here is that runs throughout this whole criminal history that you've got. So I'll take that into consideration.

It seems to me that you should be at the lower end of this, not all the way down at the bottom, but you need custody here that is below the mid-point range is what I would do in your case. [Sic] . . . .

So I'm going to sentence you here to a sentence of 99 months.

■ On review, the defendant has initially protested, for the first time, that at on no occasion during the sentencing proceeding did the trial court directly ask him if he had read his presentence report and conferred with his lawyer about it prior to the hearing. "Before imposing sentence, the court must (A) verify that the defendant and the defendant's counsel have read and discussed the presentence report[.]" Fed.R.Crim.P. 32(c)(3) (colon omitted). Sellers has argued, for the first time on review, that the lower court had denied him due process of law, or otherwise prejudiced him, by failing to pose that inquiry.

However, because the defendant had, in the trial court, mounted no objection regarding that omission, he has forfeited that alleged error as an arguable basis for appellate relief, unless the trial court's averred purported oversight constituted "plain error." See Fed.R.Crim.P. 52(b); United States v. Olano, 507 U.S. 725, 733–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." United States v. Koeberlein, 161 F.3d 946, 949 (6th Cir.1998) (citations omitted), cert. denied, 526 U.S. 1030, 119 S.Ct. 1278, 143 L.Ed.2d 371 (1999). See also United States v. Hayes, 171 F.3d 389, 391–92 (6th Cir.1999) (explaining that the exercise of a reviewing court's power to notice and correct procedurally forfeited plain errors which have adversely affected the appellant's substantial rights is entirely discretionary).

■ During sentencing, the court need not affirmatively ask the defendant and his lawyer whether they had read and discussed the presentence report; "the court need only somehow determine that defendant and counsel have had an opportunity to read and discuss [it]." United States v. Stevens, 851 F.2d 140, 143 (6th Cir.1988) (emphasis in original; note and citation omitted). If, absent direct relevant queries, the overall record nonetheless reflected that the defendant and his counsel had each read the PSR and had discussed it, no error occurred. See Ratliff v. United States, 999 F.2d 1023, 1028 (6th Cir. 1993). In the case sub judice, the sentencing hearing transcript disclosed, beyond contradiction, that Sellers' lawyer had carefully studied the PSR and had personally investigated its "criminal history" contents. That attorney concluded that the PSR's recitation of Sellers' criminal past was accurate.

Moreover, during the trial judge's extensive questioning of the defendant to verify his understanding of the contents of the PSR, Sellers never affirmatively stated that he had not read that document, or that he had not discussed it with his lawyer.[2] When, at the conclusion of the judge's inquiries, she asked the defendant if he had anything further to say, he responded negatively. Furthermore, his failure to exploit the opportunity explicitly

---

2. It should be noted that Sellers' trial counsel did not pursue the subject appeal.

On review, through his new lawyer. Sellers has not directly stated that he in fact did not read the PSR, and/or did not discuss it with his trial lawyer, prior to his sentencing hearing. However, although not precisely stated, his appellate brief appears to suggest that, because the district court failed to directly ask him if he had read the PSR and discussed it with his lawyer, this reviewing court should assume that he in fact had done neither. However, even ignoring the patent fallacy of that reasoning, the proffered assumption does not assist the defendant, as evolved herein.

offered to him by the district judge to halt her questioning at any time to discuss any aspect of the PSR with his lawyer, and particularly her solicitation of the defendant to privately consult with his counsel about the PSR's criminal history tabulation, implies that he had previously discussed the PSR's contents with his lawyer, to his satisfaction.

At any rate, beyond rational contravention, Sellers had a reasonable *opportunity* to read his presentence report prior to the hearing, and to confer with his counsel. The defendant has not alleged that the PSR was in his possession, and/or that of his counsel, for an insufficient period of time to permit a meaningful review and discussion thereof. Sellers was at liberty on bail prior to his sentencing; he had unrestrained occasion to read and discuss the PSR with his lawyer during the one-month period between that report's completion and the sentencing hearing.

Accordingly, because the record has clearly reflected that Sellers and his lawyer each had adequate opportunity to read the PSR, and together discuss it, prior to the sentencing hearing, the district court committed no "plain error," or *any* error, by neglecting to direct an inquiry into those matters.

Perhaps a more acceptable practice of procedure would dictate that sentencing courts should, on the record, *always* directly ask each criminal defendant if, prior to the sentencing hearing, he or she had read the presentence report and had discussed it with his or her lawyer, or, at minimum, if he or she had been given an opportunity to do so. Similar queries should be directed to defense counsel. Simple, direct, and concise inquires by the sentencing judge will eliminate the issue as a charge of procedural error in future cases.

■ In any event, even assuming *arguendo* that the trial court had *erred* by failing to frame direct material inquiries to the defendant and his attorney, that error would have been harmless. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a). The defendant has not contended that the district court relied upon false information contained within the PSR in imposing its sentence, nor has he argued that anything stated in the PSR was untruthful, erroneous, or factually misleading. *See Ratliff,* 999 F.2d at 1028. To the contrary, Sellers' attorney conceded at sentencing that the criminal history section of the PSR was completely accurate. Rather, the defendant has relied upon an alleged technical error, namely the trial court's failure to directly ask him and his lawyer whether they had read and discussed the PSR.

■ Because the alleged error was merely technical, the defendant must prove that he suffered *actual prejudice* as a result of that alleged error. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Cabral,* 166 F.3d 1215 (Table), 1998 WL 840852, at *2 (6th Cir.1998) (*per curiam*). Even though Sellers has not contested that the district court's sentencing judgment was supported by the record and the governing law, he has nonetheless argued that he suffered actual prejudice because he purportedly did not know, prior to his sentencing hearing, that the PSR assigned him to criminal history category VI, and therefore he did not know that he would confront a Guidelines sentencing range of 92 to 115 months of incarceration, as opposed to the plea hearing "estimate" of no more than 84 to 105 months.

Even if the assumptions and inferences suggested by Sellers were indulged in his favor, he has nonetheless failed to prove

that any of his substantial rights were offended. If he in fact had *not* read the PSR and/or had *not* discussed it with his lawyer prior to the sentencing hearing, and therefore he had not previously understood that he might face a sentencing range of 92 to 115 months, he still has suffered no actual prejudice. Sellers has not explained what course of action he would have taken if he had known his true sentencing range prior to the sentencing hearing. The fact remains that he still would not have possessed (1) any sustainable rationale for opposing any assertion made within the PSR, nor (2) any compelling factual or legal support for a reduced Guidelines sentencing range. *See Ratliff,* 999 F.2d at 1028 (concluding that no prejudicial technical error or due process violation occurred where the defendant, who had been denied an opportunity to review his PSR, had failed to prove that the sentencing court had relied upon any false information contained therein); *Stevens,* 851 F.2d at 144 (ruling that, although the sentencing court erred by failing to ascertain whether the defendant's lawyer had read the PSR and had discussed it with the defendant, which PSR had contained some faulty information, the defendant suffered no due process violation and was not otherwise actually prejudiced, because the court had not relied upon the PSR's false intelligence when passing its sentence). Setting aside for the moment the mutual covenant of the plea bargain against seeking any sentencing departure, the most the defendant could have done to seek sentencing relief on the subject record would be to petition for a favorable departure, which action his lawyer had taken.[3]

Because Sellers cannot prove that he suffered actual prejudice by the trial court's failure to ask him if he had read the PSR and had discussed it with his lawyer, he would not prevail on appeal even if he had preserved the charged error below. *A fortiori,* Sellers could not prove, under the heightened "plain error" standards which govern his forfeited objection, that any of his substantial rights were adversely affected by the district court's alleged technical error. *See United States v. Barrows,* 996 F.2d 12, 14 (1st Cir.) (*per curiam*) (resolving, in a case in which the defendant had, before the trial court, failed to request a continuance to permit his review the presentence report and consultation with his lawyer, that the defendant had proved no miscarriage of justice or substantial prejudice, because he did not claim that his actual ultimate sentence had been wrongly computed), *cert. denied,* 510 U.S. 958, 114 S.Ct. 418, 126 L.Ed.2d 364 (1993). Therefore, because the lower court had committed no error, plain or otherwise, by its faulted Rule 32(c)(3) omission, and alternatively because any arguable error in the sentencing questioning was substantively harmless, Sellers' assignment of "plain error" in his sentencing is non-cognizable on review. *United States v. Saucedo,* 226 F.3d 782, 787 n. 10 (6th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 838, 148 L.Ed.2d 718 (2000).

Next, the defendant has asserted that the trial court should have sustained his motion for a downward sentencing departure, because, allegedly, the trial court, the prosecutor, and the defendant's own lawyer had misled him, at his plea acceptance hearing, into concluding that his criminal history category would be either IV or V, whereas the sentencing court ultimately assigned him to criminal history category VI. He has averred that he had believed at the time of his guilty plea that he would be exposed to a maximum imprisonment range of 84 to 105 months, whereas the

---

3. Sellers did not move to withdraw his guilty plea.

trial court ultimately adopted a sentencing range of 92 to 115 months. Although Sellers' ninety-nine-month incarceration penalty did not exceed the boundaries of his anticipated sentencing range of 84 to 105 months, he has nonetheless contended that the court's adoption of the faulted imprisonment range of 92 to 115 months unfairly prejudiced him, because, given the trial court's resolution to sentence him at the low end of the applicable Guidelines range, he might have incurred a penalty totaling less than ninety-nine months if the court had instead applied the reduced category V sentencing range of 84 to 105 months.[4]

However, as evolved above, the defendant, via his written plea agreement, as well as his verbal statements made under oath during his plea hearing, had *expressly waived* his right to move for a downward sentencing departure; and further *expressly acknowledged* his cognizance that, because the trial court would ascertain his appropriate Guidelines sentencing range in light of the relevant material gathered by the probation office *following* his guilty plea, no promises had been made to him regarding his proper sentencing range. A contention which a litigant has *waived* by volitionally relinquishing a known right, as opposed to one which had been merely *forfeited* via procedural default, is *forever barred*, and is thus absolutely non-reviewable, irrespective of any resulting alleged adverse impact upon that party's rights. *See Koeberlein*, 161 F.3d at 949 n. 2.

Moreover, even if Sellers had *not* waived his right to petition for a downward sentencing departure, no actual error infected the district court's denial of that motion. "[A]lthough a sentencing court's decision to depart from the Guidelines is reviewable for abuse of discretion, its decision *not* to depart is insulated from appellate scrutiny, unless the sentencing judge legally erred by failing to comprehend the lawful extent of his or her power to depart." *United States v. Dunlap*, 209 F.3d 472, 481 (6th Cir.2000) (emphasis added) (*citing, inter alia, Koon v. United States*, 518 U.S. 81, 96–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Coleman*, 188 F.3d 354, 357 (6th Cir.1999) (*en banc*)). In the action *instanter*, the sentencing transcript evidenced beyond dispute that the district judge understood her judicial authority to depart in appropriate cases, but had justifiably elected not to bestow upon Sellers a favorable departure, in light of the total record evidence material to his sentencing. That pronouncement is non-reviewable.

Generally, a sentence imposed within the correct Guidelines range is not appealable, unless the defendant can identify a specific legal error in the sentencing adjudication. *United States v. Hayes*, 49 F.3d 178, 182 (6th Cir.1995). The lower court correctly determined Sellers' Guidelines sentencing range to be 92 to 115 months of correctional detention, and exacted a custodial term within its boundaries, namely ninety-nine months. Sellers has uncovered no legal error in that adju-

---

4. Sellers has *not* claimed that his placement in category VI offended his constitutional *due process* protection; nor could he persuasively do so. Even if he had justifiably relied in good faith upon purported representations by the trial court and counsel that his Guidelines sentencing range would be less than the range ultimately adopted by the sentencing court, he suffered no due process violation, because his actual sentence of ninety-nine months in the custody of the United States Bureau of Prisons was less than his statutory maximum exposure of forty years (480 months) under 21 U.S.C. §§ 841(b)(1)(B) & 846. By means of the written plea agreement, and his sworn statements made at the plea hearing, Sellers had expressed comprehension that his maximum potential incarceration term was forty years. *See United States v. Stephens*, 906 F.2d 251, 254 (6th Cir.1990).

dication; nor has he identified any unfair prejudice to himself resulting therefrom, other than his meaningless speculation that the trial court might have sentenced him to less than ninety-nine months of imprisonment if it had exercised its discretion to depart from the Guidelines by applying the reduced category V sentencing range.

Accordingly, because Sellers forfeited his first, and waived his second, assignments of sentencing error, neither are cognizable on review. Furthermore, both were misconceived on the merits. Sellers' sentence is AFFIRMED.