RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 03-1923/2219

RACHEL SHANNON SOSEBEE (03-1923) and JACK P.
FARRIS (03-2219),

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00173—Richard A. Enslen, District Judge.

Argued and Submitted: February 4, 2005

Decided and Filed: August 12, 2005

Before: BATCHELDER and DAUGHTREY, Circuit Judges; O'KELLEY, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, for Appellant. Glenn Martin, UNITED STATES ATTORNEY, Lansing, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, Joseph C. Hawthorn, Beaumont, Texas, for Appellants. Barbara Colby Tanase, UNITED STATES ATTORNEY, Lansing, Michigan, for Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. The only issues raised in this sentencing appeal concern the district court's calculation of the amount of loss suffered by the victims in this case and of the amount of restitution that the defendants have been ordered to pay. A related question, raised in response to the Supreme Court's recent opinion in *United States v. Booker* after briefing was completed, concerns the applicability of the ruling in *Booker* to the imposition of an order of restitution.

_____

[*] The Honorable William C. O'Kelley, United States District Judge for the Northern District of Georgia, sitting by designation.

The defendants, Rachel Shannon Sosebee and Jack Farris, were originally charged with fraud and conspiracy to defraud in a scheme involving bogus "charge backs" or discounts on orders their medical supply company placed with pharmaceutical manufacturer Pharmacia & Upjohn, Inc., now a part of Pfizer, Inc., and referred to here as "Upjohn." Under a plea agreement reached with the government, the defendants waived the right to proceed by indictment and pleaded guilty instead to a one-count information charging misprision of a felony, in violation of 18 U.S.C. § 4. Both were sentenced to five years' probation.

The government's agreement with defendant Farris included a requirement that he make restitution for "the losses caused by his activities," which the district court later calculated at $2,300,597.99, the loss directly incurred by Upjohn. Farris now appeals the restitution order, contending that the calculation was erroneous, first, because there was no evidence of the fair market value of what he describes as the "diverted pharmaceuticals" and, second, because the loss amount should have been limited to the gross profits realized by virtue of the fraud ($268,000) and his liability limited to the amount of pecuniary harm that was "reasonably foreseeable" to him ($177,961.60), based on the 30-percent sales commission that he earned ($53,682.52). For the reasons set out below, we find no error in connection with the restitution order entered against Farris and affirm that order.

The government's plea agreement with Sosebee, by contrast, did not provide for restitution, although it did call for "a fine of $250,000.00 or twice the gross gain or gross loss resulting from the offense, whichever is greater . . . ." The pre-sentencing report nevertheless recommended that the district court order restitution, jointly and severally, against both defendants in the amount of the actual loss to Upjohn. Although Sosebee objected to the loss calculation that was the basis of the recommendation, she did not object to the imposition of restitution at the time of sentencing. On appeal, however, Sosebee argues that the district court committed plain error in ordering her to pay restitution because Upjohn was not a "victim" of the specific offense to which she pleaded guilty; because the court did not comply with applicable provisions of the Victim and Witness Protection Act of 1982; and because the amount of restitution ordered was excessive. We find no plain error in connection with the district court's determination that restitution was legally appropriate in Sosebee's case, nor in the court's calculation of the amount or manner of payment.

The propriety of the restitution order does not end there, however. Subsequent to the filing of briefs but before submission of the appeal for decision, the United States Supreme Court announced its opinion in *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738 (2005), resulting in a round of supplemental briefing in this case concerning the validity of the district court's sentencing order, both as to the determination of the proper offense level and the amount of restitution. As to the offense level set by the district court, we conclude that there is no plain error because Farris's substantial rights were not affected. Moreover, we hold that restitution is not subject to *Booker* analysis because the statutes authorizing restitution, unlike ordinary penalty statutes, do not provide a determinate statutory maximum.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

At the time that these events transpired, Shannon Sosebee was the owner of a company called Requirements, Inc., located in Alpharetta, Georgia. Prior to August 1996, Requirements was in the business of supplying industrial products to various federal government facilities. In July 1996, defendant Jack Farris, a licensed pharmacist and distant relative of Sosebee's, approached Sosebee to suggest expanding the company to include the sale of medical supplies and pharmaceuticals. Sosebee and Farris then created a new medical division of Requirements, and Sosebee named Farris as the division's Vice President of Sales. Farris was to receive a 30-percent commission on all sales made by the new medical division.

Sosebee and Farris negotiated a contract with Upjohn authorizing Requirements to resell Upjohn pharmaceuticals. Some of Sosebee's existing clients were government agencies and, as such, were eligible for reduced prices on Upjohn pharmaceuticals. Under her agreement with Upjohn, Sosebee could claim a "charge back" on the pharmaceuticals she purchased if she resold them to eligible federal and tribal health facilities. The contract terms called for Sosebee to pay the full price initially but, upon notification that the products had been sold to eligible facilities, Upjohn would credit Requirements's account with the difference between the discounted price and the contract price. That difference was known as a "charge back."

Shortly after Farris and Sosebee developed the medical division at Requirements, Farris introduced Sosebee to Bruce Storrs, owner of Cyprus Resources in Nevada. All the Requirements pharmaceutical sales at issue in this case were made to Cyprus Resources. Requirements sold Upjohn products to Cyprus at less than the price it actually paid Upjohn, and Cyprus resold the products on the wholesale market. In October 1996, Sosebee began submitting "charge backs" to Upjohn, claiming that Requirements had sold the products to specific eligible facilities when, in fact, they had been sold only to Cyprus. Sosebee later maintained that Storrs told her that Cyprus was reselling the products to eligible facilities, but Storrs denied this. In August 1997, Upjohn became suspicious because of the high volume of discounted pharmaceuticals involved and contacted Sosebee for further verification that the products were actually being sold to eligible facilities. In response, Sosebee provided false information to Upjohn, claiming she could not provide full proof of payment because the eligible facilities had paid Requirements by electronic funds transfer. In reality, Cyprus had paid Requirements by check for each transaction. In September 1997, representatives from Upjohn called Farris to ask about the source of the sales. Farris knew at that time that Cyprus was not selling the products to eligible facilities, but he intentionally misrepresented the facts to Upjohn in an attempt to deter Upjohn from investigating further. The total amount of the improper "charge backs" was $2,300,597.99. Of this, Farris received $53,682.52 in commissions, and Requirements reportedly made a gross profit of $268,000.

After further investigation, Upjohn filed civil suit against Requirements in the Northern District of Georgia. In December 2000, the district court there granted Upjohn summary judgment in the amount of $7,422,061.12, plus costs and attorneys' fees. However, Sosebee had voluntarily dissolved Requirements in 1999, and it appears that no payments have been made on Upjohn's civil judgment.

Subsequently, both Sosebee and Farris were indicted on criminal charges in the Western District of Michigan. Sosebee was charged with 12 counts of conspiracy to commit mail and wire fraud and commission of fraud. Farris was indicted on one count of conspiracy to commit mail and wire fraud. After successfully plea-bargaining with the government, Sosebee and Farris were allowed to plead guilty to an information charging a single count of misprision of a felony, in violation of 18 U.S.C. § 4. At sentencing, the district court imposed on Farris and Sosebee, jointly and severally, a restitution order in the amount of $2,300,597.99, to be paid immediately. Farris had agreed in his plea agreement to make full restitution for "losses caused by his activities," but he now appeals the amount of the restitution, claiming that the court wrongly calculated Upjohn's loss. Sosebee had not agreed to pay restitution, although she did not object to the imposition of an order of restitution at her sentencing hearing. She now appeals the imposition of restitution, the calculation of the loss amount, and the method of payment. In addition, both defendants question the propriety of a restitution order in the wake of the decision in *Booker*.

## II. *DISCUSSION*

### A. *The Loss Calculation*

On appeal, defendant Farris challenges the district court's loss calculation for purposes of both determining his offense level and setting the restitution amount. Sosebee challenges the amount only

as it applies to restitution. When a defendant's challenge is to the amount of loss under the sentencing guidelines, we review the district court's calculation for clear error. *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002). "A factual finding is clearly erroneous where, although there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 907 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). With regard to the amount of loss for purposes of restitution, we review the district court's calculation for abuse of discretion only. *See United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992). We conclude that the district court did not err under either standard.

The pre-sentencing report calculated Upjohn's loss as \$2,300,597.99 for the purposes of determining the defendants' offense levels under the sentencing guidelines. The district court used this same loss calculation as the appropriate amount of restitution. Calculations of loss under the sentencing guidelines are governed by U.S.S.G. § 2B1.1. *See United States v. Moore*, 225 F.3d 637, 642 (6th Cir. 2000). The commentary notes to § 2B1.1 state that "fair market value" is ordinarily the proper determination of loss. *See id.* at 642. We have developed a two-step process to guide district courts in determining the amount of loss. The initial determination is whether a market value for the stolen property is readily ascertainable. Second, if such a market value is ascertainable, we must determine whether that figure adequately measures either the harm suffered by the victim or the gain to the perpetrator, whichever is greater. *See United States v. Warshawsky*, 20 F.3d 204, 213 (6th Cir. 1994).

The standard test for determining fair market value is to look at "the price a willing buyer would pay a willing seller at the time and place the property was stolen." *Id.* (internal quotations omitted). Here, the government asserts that the original price at which Upjohn sold the pharmaceuticals to Requirements is the market price. We agree. Requirements and Upjohn were a willing buyer and a willing seller who exchanged goods on the free market and at the market price. The district court did not err in finding that the price Requirements paid was the fair market value of the drugs on the wholesale market. The loss is then calculated as the difference between the original price and the discounted price, *i.e.*, the amount Requirements fraudulently induced Upjohn to "charge back."

We established in *Warshawsky* that the market value rule should be bypassed only if the market value is not readily-ascertainable or inadequately measures the harm or gain. *See Warshawsky*, 20 F.3d at 212-14. As discussed above, the original contract price for Upjohn's pharmaceuticals provides an easily-ascertainable market value. The question then becomes whether the loss under the market value rule, *i.e.*, the "charge back" amount, inadequately measures the harm or gain. The defendants argue that the market-value loss calculation attributes excessive loss to Upjohn, because Sosebee and Farris sold to Cyprus at less than they paid Upjohn and because Upjohn could not have sold the same volume as Requirements did, if the product had been sold to Cyprus at full price. Thus, the argument goes, Upjohn could not have realized the profit implicit in the current restitution amount. The defendants therefore maintain that the appropriate loss calculation is the amount of profit that Requirements actually obtained from the sales to Cyprus, which, according to the defendants, was approximately \$268,000.00.

To support this argument, the defendants rely on an Eleventh Circuit case, *United States v. Yeager*, 331 F.3d 1216 (11th Cir. 2003), involving a somewhat similar fraud scheme. In *Yeager*, the defendant made purchases at a reduced price under the agreement that he would resell the products only to a select, restricted class of people. Instead, the defendant sold the products on the general market, undercutting the victim's direct sales at the general market price. In *Yeager*, the court held that the victim was "denied the opportunity to sell [the product] through established channels to these non-authorized customers at a higher price." *Id.* at 1224. The victim did not actually lose money from the transaction, because there was a profit, albeit small, made on the discounted price, but the victim sustained an "opportunity cost" loss. An opportunity-cost loss is a "loss based on the victim's inability to use money or assets in a more profitable way because of the perpetrated fraud." *Id.* at 1225. Finding that opportunity-cost loss cannot be considered at sentencing, the *Yeager* court determined that the

focus should be on the profit the victim could have made had it sold the product itself to the non-eligible purchasers.  The court held that the profit made by the defendants was an adequate correlation to the profit the victims could have made in an un-regulated market. *Id.* at 1225-26.  The district court correctly found that *Yeager* is distinguishable from the case at hand.  In *Yeager*, the defendant purchased the goods from the victims at the discounted price.  Sosebee, however, purchased the pharmaceuticals at the full price, and she received money back only after she had resold the products and represented that the sales had been to eligible government buyers.  The defendants argue that Upjohn could not have sold the same volume of products at the full price, but the relevant number here is not what Upjohn *could have* sold, but what it *did* sell.  Upjohn *did sell* the products to Requirements at full price.  Then, by fraud, Requirements took money back from Upjohn.  The loss sustained as a result of the defendants' fraud is the full amount of the "charge back" that Upjohn was fraudulently induced to rebate to Requirements.  If the products could not have been resold to the public at the higher price, that loss would have been incurred by Requirements, because the company had already purchased the products at the higher wholesale price from Upjohn.  Upjohn sent money to Requirements and, in doing so, Upjohn sustained an actual, tangible, ascertainable loss.  In *Yeager*, there was no such actual loss.

The district court did not abuse its discretion nor commit clear error by using the market price rule to determine the loss attributable to Farris and Sosebee.  Nor did the court err in finding that such a loss determination adequately correlated with the actual harm suffered by Upjohn.  The defendants claim that they should not be required to pay back more than they profited, but it was the defendants, not Upjohn, who decided to resell the products at such a low price on the unrestricted market.

## B.  *Loss Calculation under Booker*

As for defendant Farris's claim that the loss calculation improperly affected the court's determination of his offense level under the guidelines, we find that this claim has no merit.  Farris argues that, by increasing his offense level based on the amount of loss, the trial court violated his Sixth Amendment rights under *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).  As discussed in greater length in Section E, *Booker* renders the Sentencing Guidelines merely advisory, holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756.  As Farris did not object to the imposition of his sentence on Sixth Amendment grounds, this court must now review the sentence for plain error.  On plain error review, "an appellate court may only correct an error not raised at trial if there is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004)(Moore, Cole, *Marbley*)(internal quotations omitted).  If these three conditions are met, the appellate court may "exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 672 (internal quotations omitted).

We need not address whether there is error that is plain, because Farris cannot show that the district court's determination of his offense level affected his substantial rights.  Based on the amount of loss, Farris received an offense level of nine, which subjected him to four to ten months imprisonment under the Guidelines.  Without the enhancement for the amount of loss, the sentence range would have been zero to six months.  Farris actually received a sentence of five years probation.  A sentence of probation is authorized by 18 U.S.C. § 3551(b)(1) and §§ 3561-66 and does not depend on the Sentencing Guidelines for validity.  Given that the district court sentenced Farris based on statutory provisions rather than on the Sentencing Guidelines, this court has no reason to believe that a lower offense level under the Guidelines would have affected the sentence in any way.  When there is no indication that a sentence would be lower absent the error, this court cannot find that the defendant's substantial rights were affected.

### C. *The Restitution Order*

Although Sosebee objected to the amount of restitution as calculated in the pre-sentencing report, she did not object to the imposition of restitution in some amount at the time restitution was recommended by the probation department or at the sentencing hearing. On appeal, Sosebee nevertheless claims that the restitution was improperly imposed under the restrictions of 18 U.S.C. § 3663 and § 3663A, and she requests that the restitution order be stricken from the district court's judgment. When "no objection is made to the order of restitution at sentencing, the appellate court reviews for plain error." *United States v. Hall*, 71 F.3d 569, 573 (6th Cir. 1995). "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed.R.Crim.P. 52(b). To establish plain error, Sosebee must show that: "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected [her] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004); *see also United States v. Olano*, 507 U.S. 725, 734-35 (1993). The Supreme Court has directed that, "[a]t a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, 507 U.S. at 734.

Undoubtedly, the *wrongful* imposition of a restitution order for over two million dollars would affect a defendant's substantial rights and would seriously impugn the integrity and public reputation of the court that imposed such an order. That leaves the disputed issues here: whether there was error at all and, if so, whether it was "obvious or clear." The district court ordered restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C. § § 3663-3664, which permits an order of restitution to the "victim" of the offense for which the defendant was convicted. 18 U.S.C. § 3663(a)(1)(A). Under § 3663(a)(2), "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Sosebee contends that restitution may not be ordered in this case because Upjohn was not a "victim" of her offense – that Upjohn suffered no harm as the result of the specific offense to which she pleaded guilty, *i.e.*, misprision of a felony – and that the district court committed an obvious error in awarding restitution to Upjohn. We find no legal merit to this argument and, therefore, no error, plain or otherwise.

In *Hughey v. United States*, 495 U.S. 411, 420 (1990), the Supreme Court held that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." It follows that in finding loss, a court may not consider acts for which the defendant was not convicted. The Victim and Witness Protection Act provides that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," restitution may be ordered in favor of "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2). In cases that do not involve "a scheme, conspiracy, or pattern of criminal activity" as an *element* of the crime of conviction, "[r]estitution is limited to losses caused by the specific conduct that is the basis of the offense of conviction." *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993).

Here, there is no question that Upjohn was the victim of fraud and conspiracy. Sosebee points out, however, that she pleaded guilty not to fraud or conspiracy but only to misprision of a felony. Because that offense is made applicable under 18 U.S.C. § 4 to one who, "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States," she argues that she is not liable for an order of restitution, because her act of concealment took place only *after* the loss from the fraud occurred. We disagree.

The record supports a determination that Sosebee knew of the fraud while the conspiracy was in progress, perhaps even from its beginning (there would seem to be no legitimate business reason to sell goods to Cyprus at less than the defendants had paid Upjohn for them), and concealed the scheme while it was in progress. Had her knowledge and concealment come only *after* the scheme came to an

end, she would have been guilty of no more than being an accessory after the fact. This, however, was not the case here. *But for* her continuing concealment of the losses being incurred by Upjohn, those losses might have been avoided altogether or stemmed to a significant degree, or – in the alternative – Upjohn might have had a realistic chance to recoup assets of Requirements that apparently have since been dissipated. We have no hesitation in concluding that Sosebee's misprision of the felony involved in this case was a direct and proximate cause of some or all of the victim's losses, even if it was not the sole cause. It follows that the restitution order was legally appropriate under the Act. This case is distinguishable, for example, from that of *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993), in which we held that the costs of investigating and prosecuting an offense cannot be included in a restitution order because they did not "result directly from the defendant's offense." *Id.* at 1026. In *Ratliff*, the proper amount of restitution was limited to the loss directly resulting from the defendant's embezzlement. *Id.* at 1027.

## D. *The Amount of Restitution*

Sosebee argues for the first time on appeal that the district court erred by failing to take into account her financial situation and ability to pay when ordering restitution. Under the Victim and Witness Protection Act:

> (i) The court, in determining whether to order restitution under this section, shall consider --
>
>> (I) the amount of the loss sustained by each victim as a result of the offense; and
>>
>> (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3663(a)(1)(B)(i). Sosebee argues that the district court made no findings relating to her financial situation and thus failed to take her lack of ability to pay into account. We have held, however, that "the district court is not required to make findings on the defendant's financial conditions" when ordering restitution. *United States v. Hall*, 71 F.3d 569, 573-74 (6th Cir. 1995). Moreover, Sosebee failed to submit requested information that was relevant to the question of whether she should also be made to pay a fine in this case, and what financial information was available apparently resulted from the probation officer's independent investigation of Sosebee's resources. The report shows that although Sosebee was unemployed at the time of sentencing, she was being supported by her husband, had no dependents, had recently sold a property for $500,000.00., lived in a house worth nearly $400,000, had a college degree and a physician's assistant certification, had no emotional or drug problems, and had a strong work history. Moreover, she was not incarcerated as a result of her conviction and was in a position to seek employment. Finally, she shares the obligation to make restitution with her co-defendant, Farris. Given Sosebee's personal earning capacity and financial situation, combined with the fact that she failed to provide requested financial information to the probation department, we conclude that the district court did not commit plain error in requiring her to pay restitution.

Furthermore, the Act does not require the judge to consider the defendant's financial situation in determining the *amount* of the restitution but only *whether or not* restitution should be ordered. *See* 18 U.S.C. § 3663(a)(1)(B). Once the court determines that restitution is appropriate, 18 U.S.C. § 3664(f)(1)(A) requires that the court "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."

Nor do we find any error in connection with the district court's order that restitution be paid immediately. This issue, raised for the first time on appeal, cannot be sustained, given the defendant's failure to supply information to the court that would support her claim that she is unable to make a lump-sum payment of restitution.

### E. *Restitution under Booker*

Finally, Sosebee challenges the validity of the restitution order in light of *Booker*. She argues that her sentence violates her Sixth Amendment rights because the restitution order is based on a factual determination by the district court, the amount of loss to Upjohn, that was neither found beyond a reasonable doubt by a jury nor admitted to by the defendant. Because Sosebee did not raise a Sixth Amendment challenge to her sentence before the district court, this court may only reverse upon a finding of plain error by the district court. *See United States v. Oliver*, 397 F.3d 369, 377 (6th Cir. 2005).

We have yet to decide explicity whether *Booker* applies to orders of restitution. In *United States v. McDaniel*, 398 F.3d 540, 554 (6th Cir. 2005), we vacated the restitution order along with the rest of the sentence and remanded the case for re-sentencing in light of *Booker*, but explicitly declined to decide the "important and complex question" of whether restitution orders are subject to reversal under *Booker*. Given existing Sixth Circuit precedent and recent decisions of the other circuits on this issue, we now conclude that *Booker* does not apply to restitution and, thus, that Sosebee's Sixth Amendment challenge has no merit.

It is true that under Sixth Circuit case law, restitution constitutes punishment. *See United States v. Schulte*, 264 F.3d 656, 662 (6th Cir. 2001) (restitution imposed under either the Victim and Witness Protection Act or the Mandatory Victim Restitution Act constitutes punishment for purposes of the Ex Post Facto Clause); *see also United States v. Bearden*, 274 F.3d 1031, 1041 (6th Cir. 2001) ("restitution ordered as part of a criminal sentence is punitive rather than compensatory in nature"). Although restitution is considered punishment in this context, we have nevertheless held that restitution orders are not affected by the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the restitution statutes do not specify a statutory maximum. *See Bearden*, 274 F.3d at 1042. Several other circuits, including the Third, Seventh, Eighth, and Tenth, have also held that *Apprendi* does not apply to restitution orders under the Victim and Witness Protection Act or the Mandatory Victim Restitution Act. *See United States v. Syme*, 276 F.3d 131, 159 (3rd Cir. 2002); *United States v. Behrman*, 235 F.3d 1049, 1054 (7th Cir. 2000); *United States v. Ross*, 279 F.3d 600, 609-10 (8th Cir. 2002); *United States v. Wooten*, 377 F.3d 1134, 1143-45 (10th Cir. 2004).

In addition, five of our sister circuits have recently addressed the issue of whether *Booker* affects restitution orders. Although they rely on different reasoning, all five circuits have uniformly declined to reverse an order of restitution based on the concerns raised in *Blakely* or *Booker*. *See United States v. Antonakopoulos*, 399 F.3d 68, 83 (1st Cir. 2005) (restitution has no bearing on the defendant's guideline range or term of imprisonment, and thus *Booker* does not apply to restitution); *United States v. Trala*, 386 F.3d 536, 547 (3rd Cir. 2004)(*Blakely* and *Apprendi* do not apply when the amount of restitution was not a disputed issue of fact); *United States v. Swanson*, 394 F.3d 520, 526 (7th Cir. 2005)(because there is no "prescribed statutory maximum" for restitution orders, *Blakely*, *Booker*, and *Fanfan* do not affect the manner in which findings of restitution amounts must be made); *United States v. DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004)(restitution orders are unaffected by *Blakely* because restitution determinations "are quite different from sentencing determinations under the Sentencing Guidelines"); *United States v. Garcia-Castillo*, No. 03-2166, 2005 WL 327698 at *4-7 (10th Cir. Feb. 11, 2005)(the restitution order did not violate *Blakely*/*Booker* for the three independent reasons that (1) restitution is not punishment; (2) the defendant admitted the facts underlying the restitution order, i.e. the fact that he was involved in the conspiracy; and (3) the restitution order was not plain error because any error could not be considered plain given the unsettled state of the law

regarding how restitution implicates the Sixth Amendment)(not selected for publication); *Wooten*, 377 F.3d 1134, 1144, n1 (10th Cir. 2004)(there is no prescribed statutory maximum for restitution, so a restitution order is not affected by *Blakely*). For several reasons, we consider it appropriate to take the same approach as that taken by the rest of the circuit courts that have addressed this issue and to adopt the same rule.

First, restitution orders are authorized by statute, 18 U.S.C. §§ 3663, 3663A, and 3664, and in this sense are distinct and separate from the United States Sentencing Guidelines. Although the guidelines mandate imposition of restitution where allowable under the statutes, the restitution statutes function independently from the guidelines and do not rely on the guidelines for their validity. Thus, the *Booker* Court's holding that the Sentencing Guidelines are now merely advisory does not affect orders of restitution. Nor does the *Booker*'s analysis of the Sixth Amendment affect restitution, because a restitution order for the amount of loss cannot be said to "exceed the statutory maximum" provided under the penalty statutes. Finally, the Victim and Witness Restitution Act and the Mandatory Victim Restitution Act specifically state that the amount of restitution should be equal to the "amount of each victim's losses *as determined by the court*." 18 U.S.C. 3664(f)(1)(A) (emphasis added). Where, as here, a statute *mandates* that a judge exercise his or her discretion, *Booker* provides no impediments to a judicial determination of the necessary underlying facts.

## *CONCLUSION*

For the reasons set out above, we AFFIRM the district court's judgment against Farris and Sosebee.