McKEE, Circuit Judge, Circuit Judge.
Concurring in part and dissenting in part with Judges RENDELL, AMBRO, SMITH, and BECKER joining.
Given the Supreme Court’s holding in Libretti v. United States, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995), I agree that a judicial determination of the amount of forfeiture when imposing a criminal sentence does not violate the Sixth Amendment right to a jury trial. Although I find it difficult to reconcile Libretti with the Court’s subsequent decisions in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), any tension between Libretti and those cases must be resolved by the Supreme Court, as the majority explains. See Maj. Op. at 332 (citing United States v. Ordaz, 398 F.3d 236, 241 (3d Cir.2005)). I therefore join Section II of the majority opinion. However, for the reasons set forth below, I do not agree that a judge can determine the amount of restitution under either the Mandatory Victims Restitution Act (“MVRA”), 18 U.S.C. § 3663A, or the Victim Witness Protection Act (“VWPA”), 18 U.S.C. § 3663, without violating the Sixth Amendment. Accordingly, I respectfully dissent from Section IV of the majority opinion (captioned, “Restitution and Booker”).
I.
In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court stated, “any fact (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.” 530 U.S. at 476, 120 S.Ct. 2348 (citation omitted). The Court later characterized this as a “bright-line rule.” See Blakely 542 U.S. at 303, 124 S.Ct. 2531.
In United States v. Syme, 276 F.3d 131, 159 (3d Cir.2002), we held that “restitution ordered under 18 U.S.C. § 3663 [the *340 VWPA] constitutes ‘the penalty for a crime’ within the meaning of Apprendi.” We therefore had to determine “whether the .... restitution order increased beyond the statutory maximum the penalties that Syme faced.” Id. “If so, the [restitution] order violated Apprendi.” Id. We held that Apprendi did not apply because the VWPA authorizes restitution as part of the criminal sentence that is imposed upon conviction, and because the statute “does not specify a maximum amount of restitution that a court may order.” Id. We reasoned that the VWPA “provides guidelines that a sentencing judge may use to determine the amount of restitution, but does not prescribe a maximum amount.” Id. We concluded that “[t]he Apprendi rule does not apply to restitution orders ... because Apprendi applies only to criminal penalties that increase a defendant’s sentence ‘beyond the prescribed statutory maximum.’ ” Id. (quoting Apprendi, 530 U.S. at 490, 120 S.Ct. 2348).
However, the Court decided Blakely after we decided Syme. Blakely clarified that “statutory maximum” for Sixth Amendment purposes is not the maximum sentence prescribed for a given offense. Rather, “the ‘statutory maximum’ for Ap-prendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303 (emphasis in original). The Court clarified further by explaining: “In other words, the relevant ‘statutory maximum’ [for Sixth Amendment purposes] is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” Id. (emphasis in original). That definition of “statutory maximum” fatally undermines our analysis in Syme, and it is why I cannot agree with the majority’s conclusion that the Sixth Amendment does not apply to orders of restitution.
A.
In Blakely, the Court reasoned that the right to a jury trial “is meant to ensure [the people’s] control in the judiciary.” Id. at 306, 124 S.Ct. 2531. The Court explained that requiring any fact (other than a prior conviction) that increases the sentence beyond that authorized by the jury’s verdict alone to be proven to the jury “reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of a jury trial.” Id. at 305, 124 S.Ct. 2531. “Apprendi carries out this design by ensuring that the judge’s authority to sentence derives wholly from the jury’s verdict.” Id. (emphasis added). The Court explained that those who “would reject Apprendi are resigned to one of two alternatives.” Id. The first is that the jury need only find facts the legislature labels as “elements of the crime.” This alternative would allow the judge to find facts which are tantamount to sentencing factors, whether or not they result in an increase in punishment. Id. However, this reduces the jury’s findings to “a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish.” Id. at 307,124 S.Ct. 2531. The second alternative is that “legislatures may establish legally essential sentencing factors within limits — limits crossed when, perhaps, the sentencing factor is a ‘tail which wags the dog of the substantive offense.’ ” Id. (emphasis in original). This means that “the law must not go too far — it must not exceed the judicial estimation of the proper role of the judge.” Id. (emphasis in original). However, “[w]ith too far as the yardstick, it is always possible to disagree with such judgments and never refute them.” Id. at 308, 124 S.Ct. 2531 (emphasis in original). “[T]he very reason the Framers put a *341 jury-trial guarantee in the Constitution is that they were unwilling to trust the government to mark out the role of the jury.” Id.
The bright-line rule of Apprendi ensures that punishment will only be imposed in a manner that is consistent with the Sixth Amendment. It ensures that “the judge’s authority to sentence derives wholly from the jury’s verdict.” Id. at 306, 124 S.Ct. 2531. Thus, “every defendant has a right to insist that the prosecutor prove to a jury all facts legally essential to the punishment.” Id. at 313, 124 S.Ct. 2531 (emphasis in original). In Booker, the Court reaffirmed that the Sixth Amendment right “is implicated whenever a judge seeks to impose a sentence that is not solely based on ‘facts reflected in the jury verdict or admitted by the defendant.’ ” Booker, 125 S.Ct. at 749.
The Booker Court explained that the sentencing scheme at issue in Blakely ran afoul of the Sixth Amendment precisely because it “violated the defendant’s right to have the jury find the existence of any particular fact that the law makes essential to ... punishment.” Id. (internal quotation marks omitted). The judge was able to impose a sentence greater than that authorized by the jury’s verdict alone merely by finding additional facts. Id. As a result, “the judge, not the jury ... determined the upper limits of sentencing, and the facts determined were not required to be raised before trial or proved by more than a preponderance.” Id. at 751.
Here, the majority pirouettes around Apprendi’s bright-line concept of “statutory maximum” by ignoring the Court’s definition of that term while putting a favorable “spin” bn restitution. Restitution, we' are told, is “not the type of criminal punishment that evokes Sixth Amendment protection under Booker.” While conceding that restitution is a criminal sanction, the majority emphasizes that “orders of restitution have little in common with ... prison sentences.” We are reminded that “[restitution combines features of both criminal and civil penalties.” However, that focus obfuscates the inquiry and sidesteps the analysis required by Blakely.
B.
In Pasquantino v. United States, 544 U.S. 349, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005), the Court discussed the nature of an order of restitution. There, the defendants were charged with wire fraud arising from a scheme to smuggle liquor into Canada to avoid that country’s alcohol import taxes. They challenged the prosecution, arguing that the government “lacked a sufficient interest in enforcing the revenue laws' of Canada.” Id. at 1770. The argument arose from the fact that restitution of Canada’s lost tax revenue was required by the MVRA. The Court rejected the defendants’ argument, stating: “The purpose of awarding restitution' in this action [was] not to collect a foreign tax, but to mete out appropriate criminal punishment for that conduct.” Id. at 1777. Foreign tax collection was only incidental to the criminal prosecution. The primary objective of the prosecution was “deterrence and punishment of fraudulent conduct.” Id. Restitution furthered that objective even though it also made the victim whole. Thus, in Syme, we correctly concluded: “restitution ordered under [the YWPA] constitutes the penalty for a crime within the meaning of Apprendi.” Maj. Op. at 333 (quoting Syme, 276 F.3d at 159).
Here, no less than in Pasquantino, whatever compensation results from the defendants’ prosecution is merely incidental to their criminal prosecution and sentence. The primary objective of these criminal prosecutions is clearly “deter *342 rence and punishment” of criminal conduct, not ensuring compensation for the victims.
As the majority recognizes, this view of restitution is also required by the Supreme Court’s earlier decision in Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). In Kelly, the Court had to-decide if restitution imposed as part of a state criminal sentence was dischargeable in bankruptcy.[14] In resolving that inquiry, the Court noted that restitution, “[ujnlike traditional fines, ... is forwarded to the victim, and may be calculated by reference to the amount of harm the offender has caused.” Kelly, 479 U.S. at 52, 107 S.Ct. 353. However, in rejecting the defendant’s contention that restitution was subject to discharge under Chapter 7, the Court explained:
The criminal justice system is not operated primarily for the benefit of victims but for the benefit of society as a whole.... Although restitution does resemble a judgment “for the benefit of’ the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim’s injury, but on the penal goals of the State and the situation of the defendant.

Id.

Ignoring their own references to Pas-quantino and Kelly, the majority declares that “restitution is, at its essence, a restorative remedy that compensates victims for economic losses suffered as a result of a defendant’s criminal conduct.” That view of restitution ignores the Supreme Court’s pronouncement that “[t]he purpose of awarding restitution ... is not [to compensate the victim], but to mete out appropriate criminal punishment for that conduct.” Pasquantino, 125 S.Ct. at 1777. That view of restitution is also inconsistent with the bright-line rule of Apprendi.
By ignoring that bright-line rule and redefining restitution’s “essence,” the majority is able to proclaim that “even though restitution is a criminal punishment, it does not transform a defendant’s punishment into something more severe than that authorized by pleading to, or being convicted of, the crime charged.” My colleagues state “restitution constitutes a return to the status quo, a fiscal realignment whereby a criminal’s ill-gotten gains are returned to their rightful owner.” The pirouette comes full circle once my colleagues conclude: “[i]n these circumstances, we do not believe that ordering a convicted defendant to return ill-gotten gains should be construed as increasing the sentence authorized by a conviction pursuant to Booker. ”
However, that is not the question. The issue is not whether returning “ill-gotten gains should be construed as increasing the sentence authorized by a conviction.” Rather, the question is whether the verdict “alone’’ allows the judge to impose restitution with no additional finding of fact. Obviously, it doesn’t. Notwithstanding the jury’s verdict, no restitution can be imposed absent a judicial determination of the amount of loss. The fact that the statute “require[s]” the judge to find the amount of restitution, does not free the restitution order from the inescapable Sixth Amendment pitfall created when the judge, and not the jury, makes the finding. “The dispositive question ... ‘is one not of *343 form, but of effect.’ If a State makes an increase in a defendant’s punishment contingent on the finding of a fact, that fact— no matter how the State labels it — must be found by a jury beyond a reasonable doubt.” Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 2439 (2002) (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348; internal citations omitted).
II.
The majority believes that a defendant’s conviction for specified offenses authorizes restitution “as a matter of course ‘in the full amount of each victim’s losses.’ ” Maj. Op. at 336 (quoting 18 U.S.C. § 3664(f)(1)(A)). Thus, according to my colleagues, the subsequent sentence of restitution “by no means impose[s] punishment beyond that authorized by the jury-found facts. Though the post-conviction judicial fact-finding determines the amount of restitution a defendant must pay, a restitution order does not punish a defendant beyond the ‘statutory maximum’ as that term has evolved in the Supreme Court’s Sixth Amendment jurisprudence.” -However, that analysis ignores the very meaning of “statutory -maximum” and the bright-line rule of Apprendi that the Court erected to ensure the proper role of judge and jury.
To reiterate, “ ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original). “In other words, the relevant ‘statutory maximum’ is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” Id. at 303-04, 124 S.Ct. 2531 (emphasis in original). The fact that the jury’s verdict authorizes restitution “in the full amount of the victim’s loss” by no means allows any restitution to be imposed at all “without any additional findings.” The jury’s verdict allows the judge to make the additional finding, but restitution cannot be ordered on the basis of the jury’s verdict alone.

A.

The majority’s analysis requires that we accept the proposition that an order of restitution rests upon the jury’s verdict alone, even though no restitution can be imposed until the judge determines the amount of loss. We must also accept that adding a set dollar amount- of restitution to a sentence does not “enhance” the sentence beyond that authorized by the jury’s verdict alone. I suspect that a defendant who is sentenced to a period of imprisonment and ordered to pay restitution in the amount of $1,000,000 would be surprised to learn that his/her sentence has not been enhanced by the additional penalty of $1,000,000 in restitution. “Apprendi held[ ] [that] every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment.” Blakely, 542 U.S. at 313, 124 S.Ct. 2531 (emphasis in original). ■ Determining the amount of loss is “legally essential” to an order of restitution.
Yet, my colleagues agree, as they must, that, for Sixth Amendment purposes, “the ‘statutory maximum’ ... is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. ” Id. at 303, 124 S.Ct. 2531 (emphasis in original). They seek to avoid the logical consequence of that rule by suggesting that additional facts required to impose the penalty of restitution are not really “additional facts” at all. However, the Supreme Court has rejected the distinction required by the majority’s analysis.
*344 Whether the judge’s authority to impose an enhanced sentence depends on finding a specified fact [i.e. the amount of loss] ... one of several specified facts ... or any aggravating fact ..., it remains the case that the jury’s verdict alone does not authorize the sentence.
Id. at 305, 124 S.Ct. 2531. I therefore cannot accept the majority’s attempt to suggest that restitution is “not really” additional punishment. See Maj. Op. at 338 (“Restitution is, at its essence, a restorative remedy....”).
In Blakely, “[t]he application of Washington’s sentencing scheme violated the defendant’s right to have the jury find the existence of any particular fact that the law makes essential to his punishment.” Booker, 125 S.Ct. at 749 (discussing Blakely) (internal quotation marks omitted). The judge there “was required to find additional facts in order to impose the greater ... sentence.” Id. (emphasis in original). Similarly, the sentencing judges in the cases consolidated here were required to find the additional fact of the amount of loss. Thus, as in Booker, the effect of these restitution orders is to im-permissibly “increase the judge’s power and diminish that of the jury.” Id. at 751.
My colleagues claim that the conviction alone authorizes restitution in an undetermined amount, and that the judicial determination of loss “merely [gives] shape to the restitution penalty born out of the conviction.” Maj. Op. at 337 (emphasis added). That hairsplitting is analogous to the “constitutionally novel and elusive distinction between ‘elements’ and ‘sentencing factors.’ ” Apprendi, 530 U.S. at 494, 120 S.Ct. 2348. “[T]he relevant inquiry is one not of form, but of effect — does the required finding [of the amount of loss] expose the defendant to a greater punishment than that authorized by the jury’s verdict?” Id. Requiring facts that increase the sentence to be proven to a jury is “not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance.” Booker, 125 S.Ct. at 752. Restitution in any amount greater than zero clearly increases the punishment that could otherwise be imposed.[15]
*345 B.
The majority finds some comfort in being able to “join[] the Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits” in holding “that Booker does not apply to orders of restitution under the MVRA and VWPA.” However, before Booker was decided, one could have developed an even more impressive list of the courts that had incorrectly concluded that Apprendi does not apply to the federal sentencing guidelines.[16] Moreover, the cases the majority cites from other circuit courts are not very helpful.
In United, States v. Sosebee, 419 F.3d 451 (6th Cir.2005), the court rejected a claim that orders of restitution are subject to the Sixth Amendment by concluding that “restitution statutes do not specify a statutory maximum,” id. at 461, without ever considering Blakely’s definition of that term or even discussing Blakely as part of its Sixth Amendment analysis. In addition, Sosebee attempts to distinguish Booker by referring to the fact that “restitution orders are authorized by statute.” Id. at 462. However, the fact that restitution arises from statute rather than a *346 guideline is obviously irrelevant to a Sixth Amendment analysis. Constitutional rights are not subject to legislative repeal. See Ring, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556. As noted at the outset, “the very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust the government to mark out the role of the jury.” Blakely, 542 U.S. at 308, 124 S.Ct. 2531.[17]
The analysis in United States v. George, 403 F.3d 470 (7th Cir.2005), is driven by the fact that the court considers restitution a civil penalty. The court states: “There is no ‘statutory maximum’ for restitution; indeed, it is not a criminal punishment but ... a civil remedy administered for convenience by courts that have entered criminal convictions.... ” Id. at 473.
In United States v. Garza, 429 F.3d 165, 169-70 (5th Cir.2005), the Court of Appeals for the Fifth Circuit also concluded Booker does not directly affect the MVRA because it is a statute (as opposed to a guideline), without attempting to explain why that “distinction” is relevant to a Sixth Amendment analysis. With no analysis, the court proclaims that judicial fact-finding for restitution does not violate the Sixth Amendment. The court then states that “even if there were Booker error in the restitution order, any error would certainly not be plain under current law.” Id. at 170. The court used the plain error standard because the defendant had not objected to the order of restitution. The court does not cite Blakely in that part of its analysis, nor does it explain why a violation of a Sixth Amendment right to a jury finding would not affect substantial rights as required for plain error under United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
In United States v. May, 413 F.3d 841, 849 (8th Cir.2005), the Court of Appeals for the Eighth Circuit concluded “that restitution does not have a ‘statutory maximum.’ ” The court also concluded that, even if there had been a Booker error, it could not be plain because neither the Supreme Court nor the Eighth Circuit has held that Booker applies to restitution. Id. However, here again, there is no discussion of what is meant by “statutory maximum” for purposes of the Sixth Amendment.
In United States v. Bussell, 414 F.3d 1048, 1060 (9th Cir.2005), the defendant challenged imposition of costs and restitution, but the challenge to restitution rested on her claim that the court erred in relying upon the intended loss rather than the actual loss. With no discussion of Blakely, the court decreed: “[i]n contrast to its application of the Sentencing Guidelines, the district court’s orders of restitution and costs are unaffected by the changes worked by Booker.” The court relied upon United States v. DeGeorge, 380 F.3d 1203, 1221 (9th Cir.2004), and United States v. Chavez, 627 F.2d 953, 957 (9th Cir.1980), in reaching this conclusion. However, Chavez, was decided in 1980, long before Apprendi and Blakely. De-George, like Bussell, states only that restitution orders pursuant to the VWPA are “unaffected by Blakely.” The court in DeGeorge simply cited a 1994 Ninth Circuit case which stated that “restitution determinations under the VWPA are quite different from sentencing determinations under the Sentencing Guidelines.” De-George, 380 F.3d at 1221 (internal citation omitted). Moreover, the court in DeGeorge specifically stated that, because it was reversing on other grounds, “we will not address the Blakely issues here; in *347 stead, DeGeorge is free to raise them on remand.” Id. at 1220. Thus, DeGeorge does not advance the Sixth Amendment inquiry in Bussell, even though the latter court relies upon it.
The final case cited by the majority in support of its restitution determination is United States v. Visinaiz, 428 F.3d 1300 (10th Cir.2005). There, in its brief discussion of restitution under Blakely and Booker, the court stated: “[i]n the Tenth Circuit, restitution is not criminal punishment.” Visinaiz, 428 F.3d at 1316. Accordingly, Visinaiz does not further the majority’s inquiry because the majority properly views restitution as a criminal punishment as required by Pasquantino and Kelly.
III.
In attempting to distinguish restitution from imprisonment, the majority notes that Apprendi and its progeny all involved rather substantial increases in terms of incarceration based upon judicial fact-finding. The majority notes that, “[i]n those cases, the Supreme Court was faced with ‘exceptional’ and ‘enhanced’ sentences that added anywhere from two to ten years to the prison terms authorized by the facts found by the jury or pled to by the defendants.”
I agree that this distinction has some merit. For example, the defendant in Blakely “was sentenced to prison for more than three years beyond what the law allowed for the crime to which he confessed.” Blakely, 542 U.S. at 313, 124 S.Ct. 2531. However, nothing in the Supreme Court’s analysis in Apprendi or its progeny (including Blakely) suggests that the Supreme Court would tolerate this distinction or that the Sixth Amendment allows it. In fact, the Court says quite the opposite in holding that the Sixth Amendment applies to any fact-finding that increases the sentence beyond that which could be imposed based upon the jury’s verdict alone. As I have already explained, Ap-prendi requires that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490, 120 S.Ct. 2348. The majority limits that rule to increases in terms of imprisonment. However, that limitation requires us to turn a blind eye to the meaning of “statutory maximum.” It merits repeating yet again that “ ‘statutory maximum’ for Ap-prendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis in original).[18]
The Court could easily have limited its Sixth Amendment analysis by defining “statutory maximum” as the maximum sentence of incarceration or confinement (rather than punishment) that a judge may impose on the basis of the verdict alone. *348 Given the backdrop of Pasquantino and Kelly, the Court would almost certainly have used language that would have limited the reach of its analysis to enhancements that result in a deprivation of liberty if the Court intended to restrict the Sixth Amendment as the majority does. The Court could also have limited the reach of. Apprendi to any fact that “substantially” increases the sentence. The Court did neither.
I submit that it is difficult to read the majority’s attempt to rationalize the limits it places on the Court’s Sixth Amendment jurisprudence without concluding that, in essence, the majority essentially believes that applying Apprendi to orders of restitution simply stretches the Sixth Amendment too far. However, Blakely specifically rejects that limitation by noting that the Framers would not have left the “definition of the scope of jury power up to judges’ intuitive sense of how far is too far.” Blakely, 542 U.S. at 308, 124 S.Ct. 2531. Rather, the Court created a bright-line rule. Id. Pursuant to that rule, any factual finding (other than a prior conviction) that increases the defendant’s punishment beyond that authorized by the jury’s verdict alone must be proven beyond a reasonable doubt to a jury or admitted by the defendant. Our decision today cannot be reconciled with that rule.
I do, of course, realize that the precise issue of the application of the Sixth Amendment to restitution orders was not before the Court in Apprendi or its progeny. It is therefore quite possible that the Court never considered the precise issue that we are deciding when it crafted those landmark opinions. Nevertheless, given the Court’s recent jurisprudence, we are not at liberty to rationalize a distinction between punishment in the form of incarceration on the one hand, and punishment in the form of restitution on the other. Given the clear pronouncements in Ap-prendi and Blakely, any such distinction must be drawn by the Court in the first instance, and not by us. See Ordaz, 398 F.3d at 241.
A sentencing court may impose restitution under the VWPA, and it must do so under the MVRÁ. I agree with the majority’s conclusion that “the distinction between the permissive language of VWPA and the mandatory language of the MVRA is immaterial.” Under neither statute does the restitution order rest “solely” upon the jury’s verdict. A finding of loss necessarily is a condition precedent to an order of restitution, and under both statutes, it is the judge who makes the finding. As I have explained, the imposition of this . additional criminal penalty based on a fact not found by a jury violates the Sixth Amendment. Therefore, I respectfully dissent from the majority’s conclusion that the Sixth Amendment does not apply to orders of restitution.

. 11 U.S.C. § 523(a)(7) exempts from discharge any condition a state criminal court imposes as part of a criminal sentence.

. The majority's view that "[i]n imposing restitution, a district court is ... by no means imposing a punishment beyond that authorized by jury-found or admitted facts” is fallacious. To demonstrate that the maximum amount of restitution authorized by the conviction is $0, and any increase beyond that figure requires the District Court to make additional findings of fact, we offer the following.
What, exactly, is the amount of loss? When the judge says to the defendant, “I order you to pay restitution in the amount of_,” what does the judge use to fill in the blank? Certainly it is not enough to say "I order you to pay restitution in the full amount of the victim’s loss”; we suspect that the victim might be disappointed with the size of the check he ultimately receives under such a scenario. For this reason, the judge must order restitution in a specific amount, and in order to do so, he or she must make a factual determination of the size of the victim’s loss. It is this factual determination, and not the simple act of conviction, that determines the maximum award that may be imposed. That is why, in this case, the District Court did not order restitution "in the full amount of the victim’s loss”; instead, it ordered restitution in the amount of $408,970 for Leahy, $55,235 for Fallon, and $350 for Gregg.
Of course, the determination of "the full amount of the victim’s loss” plainly is an "additional finding.” So, the majority's argument requires us to accept that district courts can somehow impose restitution "in the full amount of the victim’s loss” without making a factual determination as to what that amount is. We have many fine district judges in this Circuit, but we know of none capable of this feat.
The majority fails to realize that without additional findings, the maximum sentence that may be imposed in the form of restitution is $0. To see why this is true, consider a typical first-time defendant convicted of possession with intent to distribute in violation of 18 U.S.C. § 841(a)(1). For simplicity’s sake, *345 we will focus solely on the issue of drug quantity, and assume that the jury has found that the substance at issue is cocaine and that no other sentencing elements (such as criminal history) are relevant. Under the Guidelines, the District Court could impose a sentence of 10-16 months based solely on the fact of conviction, without making any more factual findings. If the District Court later determines that the defendant possessed more than 25 grams of cocaine, then it may, in accordance with the Guidelines, impose a higher sentence.
In truth, the determination of drug quantity in this scenario is precisely equivalent to the determination of the victim’s loss in the restitution example. In the same way that conviction authorizes a judge to impose restitution "in the full amount of the victim’s loss,” so too does conviction for possession with intent to distribute under 18 U.S.C. § 841(a)(1) authorize the judge to impose "the appropriate Guidelines sentence of incarceration, based on the quantity of the drugs possessed by the defendant.”
The only real difference between the two situations is that a judge imposing restitution starts from a baseline of $0 and then makes a determination of fact regarding the actual amount of the victim’s loss, while a judge imposing incarceration for violating § 841(a)(1) starts from a baseline of 10-16 months and then makes a determination of fact regarding the actual quantity of drugs sold. Just as the maximum sentence under § 841(a)(1) without additional findings is 10-16 months, the maximum amount of restitution without additional findings is $0. Of course, the restitution statutes actually authorize or require restitution in the full amount of the victim’s loss — just like the Sentencing Guidelines require incarceration in accordance with the quantity of drugs the defendant actually sold. The only relevance of the 10-16 month range is that it is the penalty that may be imposed without any additional findings — just like the maximum award of restitution that may be imposed without any additional findings is $0. In both cases, however, the judge is required to make additional findings which will increase the sentence beyond the maximum authorized solely by conviction. The distinction that the majority draws between the pre-Booker Sentencing Guidelines and restitution under the VWPA or MVRA simply is not a meaningful one. In both cases, the judge makes factual determinations that increase the maximum penalty that may be imposed. For this reason, both schemes run afoul of the Sixth Amendment.

. United States v. Goodine, 326 F.3d 26, 27 (1st Cir.2003); United States v. Luciano, 311 F.3d 146, 153 (2d Cir.2002); United States v. Cepero, 224 F.3d 256, 268 n. 5 (3d Cir.2000); United States v. Cannady, 283 F.3d 641, 649 n. 7 (4th Cir.2002); United States v. Randle, 304 F.3d 373, 378 (5th Cir.2002); United States v. Harper, 246 F.3d 520, 530 (6th Cir.2001); United States v. Cole, 298 F.3d 659, 663 (7th Cir.2002); United States v. Mora-Higuera, 269 F.3d 905, 911 (8th Cir.2001); United States v. Ochoa, 311 F.3d 1133, 1135 (9th Cir.2002); United States v. Wilson, 244 F.3d 1208 (10th Cir.2001); United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir.2001); United States v. Fields, 251 F.3d 1041, 1043 (D.C.Cir.2001).

. Sosebee also relies in part upon our holding in Syme. See 419 F.3d at 461. As I have already explained, our decision there cannot survive Blakely.

. The Court emphasized this language for a reason, and I cannot deemphasize it as readily as the majority’s analysis requires. Even if we could somehow assume that determining the amount of loss did not expose a defendant to greater punishment, determining the amount of loss would still be essential to the restitution order. Therefore, restitution does not rest “solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Rather, it rests substantially on the judicial determination of the amount of loss. It is therefore somewhat misleading to suggest that the “key question under the Booker analysis is whether the judicial fact-finding required by the VWPA and the MVRA exposes a defendant to greater punishment than that authorized by a jury verdict or guilty plea.” Even assuming arguendo that a defendant is not exposed to a greater punishment, his/her sentence is still based on facts not found by a jury or admitted in a plea.