NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 13a0534n.06

No. 12-1304

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*May 31, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) ON APPEAL FROM THE |
| *Plaintiff-Appellee,* | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| v. | ) DISTRICT OF MICHIGAN |
| | ) |
| CAROLYN RENEE MOORE, | ) O P I N I O N |
| | ) |
| *Defendant-Appellant.* | ) |

BEFORE: CLAY and COOK, Circuit Judges; and OLIVER, District Judge.[*]

## I. INTRODUCTION

OLIVER, District Judge. Defendant-Appellant Moore was convicted of one count of tax fraud, one count of wire fraud and one count of conspiracy to commit mail fraud. She was sentenced to 35 months' imprisonment for each count, as well as a one-year period of supervised release for the tax fraud count and a three-year period of supervised release for the wire fraud and mail fraud counts, to be served concurrently. She appeals her sentence, claiming that the trial court erred in calculating her Sentencing Guidelines range by improperly calculating the loss amount and failing to grant her a three-level reduction for acceptance of responsibility. For the following reasons, we AFFIRM.

---

[*]The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

## II. BACKGROUND

Defendant-Appellant Moore was charged with 65 counts of tax fraud, 61 counts of wire fraud, and one count of conspiracy to commit mail fraud. Moore entered into a plea agreement regarding the tax and wire fraud charges, pleading guilty to one count of tax fraud and one count of wire fraud. However, she elected to go to trial on the mail fraud conspiracy charge and was found guilty. At Moore's request, she received an aggregate sentence for all three counts.

Moore's mail fraud conviction resulted from a scheme where her co-conspirators submitted fraudulent claims to her insurer for home health care services they had provided to Moore, who had been injured in a car accident. Moore prepared fraudulent tax returns for her co-conspirators in order to avoid their paying taxes on the money received from the insurance company.

In exchange for pleading guilty to tax fraud and wire fraud, the government, *inter alia,* recommended that Moore be granted a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), and an additional one-level reduction pursuant to § 3E1.1(b). The agreement provides:

> the U.S. Attorney agrees that the defendant has assisted the authorities, within the meaning of USSG § 3E1.1(b), in the prosecution of the defendant's own misconduct by timely notifying authorities of her intent to plead guilty, thereby permitting the government to avoid preparing for a trial on the tax fraud and wire fraud count against defendant, and permitting the government and the court to allocate their resources efficiently. The U.S. Attorney therefore moves that the defendant be granted a third level reduction for acceptance of responsibility as to the tax fraud and wire fraud charges against her.

(R. 79, Plea Agreement, PID #243-44.)

The plea agreement also contemplated the consequences the mail fraud charge might have on Moore's sentence. The government reserved the right to recommend against giving Moore credit for acceptance of responsibility if it "learn[ed] of information inconsistent with the adjustment," (*id*.

2

at PID #244,) and two provisions cautioned Moore against making statements at trial that might suggest a failure to accept responsibility. *Id.* The government does not invoke these provisions; Moore did not testify at her trial.

However, Moore also stipulated that she "understands that a conviction on the [mail fraud] charge . . . may result in a re-calculation of defendant's guidelines scores for the [tax fraud and wire fraud counts] and thereby give rise to a higher aggregate sentence." (*Id.* at PID #242.)

This appeal concerns two issues that arose at Moore's sentencing. First, the district court found that the loss caused by Moore's mail fraud exceeded $30,000, thus increasing her guideline calculation by six offense levels. Moore objected that the government had not shown by a preponderance of the evidence that the loss amount exceeded $30,000. Second, although the court awarded Moore a two-level reduction for acceptance of responsibility, the court declined to grant Moore an additional one-level reduction for timely notifying the government of her intent to plead guilty; Moore argued that her plea agreement regarding the tax and wire fraud counts bound the government to move for the one-level reduction at sentencing. On appeal, she argues that the court erred both in its calculation of the amount of loss and in allowing the government to allegedly breach the plea agreement by declining to move for a one-level reduction.

### III. DISCUSSION

#### A. Calculation of Loss Amount Under USSG § 2B1.1(b)(1)(D)

This court reviews for clear error a district court's loss calculation under the sentencing guidelines. *United States v. Sosebee*, 419 F.3d 451, 455 (6th Cir. 2005). In light of "the difficulties often associated with attempting to calculate loss in a fraud case, the district court 'need only make a reasonable estimate' of the loss using a preponderance of the evidence standard." *United States v. Wendlandt*, __ F.3d __, 2013 WL 1694444, at *4 (6th Cir. 2013) (quoting USSG § 2B1.1 cmt.

n.3(C) and citing *United States v. Jones*, 641 F.3d 706, 712 (6th Cir. 2011)). Moore must show that the court's finding regarding the amount of loss "was not only inexact but outside the universe of acceptable computations." *United States v. Martinez*, 588 F.3d 301, 326 (6th Cir. 2009) (citation omitted).

Both parties acknowledge that the insurance company paid the co-conspirators $63,299.10. At trial, one of Moore's co-conspirators testified that Moore told her what to write on the claim forms she submitted to the insurer. The same coconspirator testified that she gave Moore most of the money the coconspirator received from the insurer. The government also provided evidence that the co-conspirators provided far less care to Moore than they represented on their claim forms. However, Moore provided evidence that she had received at least some care.

The presentence investigation report stated that the total amount of loss was $63,299.10 and recommended a six-level increase, pursuant to USSG § 2B1.1(b)(1)(D), because the loss was greater than $30,000, but did not exceed $70,000. However, because there was evidence that Moore had received *some* legitimate care, Moore argued that the amount of loss was necessarily less than the total amount the insurer paid her co-conspirators. Accordingly, Moore objected to that calculation, arguing that the government had not shown by a preponderance of the evidence that the amount of loss exceeded $30,000. Nonetheless, the court found that the loss was greater than $30,000, but did not exceed $70,000. It also stated that "[t]he amount of loss that's been established by the insurance company is the full amount they paid" and increased Moore's offense level by six levels because the amount of loss exceeded $30,000. (R. 142, Sentencing Tr., PID #1138).

The district court did not clearly err in finding that the amount of loss was more than $30,000, which merited a six-level increase. The record does contain some evidence that the amount of loss was somewhat less than the full $63,299.10 Moore's co-conspirators received. However,

4

there was ample evidence to support the district court's finding that the amount of loss exceeded $30,000. There is evidence in the record that, on some occasions, Moore's co-conspirators were not at Moore's home on the days they claimed to have provided care. For example, the government introduced evidence showing that two co-conspirators had claimed to have provided care for Moore on days they had been at their regular jobs–one co-conspirator would have had to have worked 22.5 hours that day, while the other would have had to have worked 26 hours in the same day. Further, some of the co-conspirators testified that on days they did actually go to Moore's home, they provided care for no more than a third of the hours they claimed; one co-conspirator testified that she *never* worked the 12 hours a day for which the insurer had paid her. There was also evidence that Moore took a substantial amount of the money that the insurer paid her co-conspirators for herself. Additionally, the insurer's private investigators testified that, during their investigation, they never once observed one of the co-conspirators enter Moore's house. In light of such evidence that the co-conspirators (at least) significantly inflated the hours of care they provided and that the co-conspirators gave Moore a substantial portion of the money they received, the court's finding that the amount of loss exceeded $30,000 was well within the universe of acceptable computations. The court did not commit clear error.

## B. Acceptance of Responsibility Under U.S.S.G. § 3E1.1(b)

Moore argues that her plea agreement required the government to move for a USSG § 3E1.1(b) reduction and that the district court erred when, after the government refused to so move, it denied her the reduction. The government argues that Moore's mail fraud conviction relieved it of any such obligation. The government also argues that the fact that Moore violated her bond provides an alternative ground for affirming the district court.

5

Section 3E1.1(b) of the Sentencing Guidelines allows a district court, pursuant to a motion by the government, to grant a defendant a one-level reduction for timely notifying the government of his intention to plead guilty. A defendant is only eligible for a reduction under § 3E1.1(b) if he "clearly demonstrates acceptance of responsibility for his offense" pursuant to § 3E1.1(a). Generally, the government has "broad discretion" in whether or not to move for a § 3E1.1(b) reduction. *United States v. Smith*, 429 F.3d 620, 629 (6th Cir. 2005).

### 1. The Plea Agreement

Plea agreements "are essentially contracts," *Puckett v. United States*, 556 U.S. 129, 137 (2009), and are interpreted and enforced according to "traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991). The construction of a plea agreement is a question of law, subject to *de novo* review. *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007). However, if the terms of an agreement are ambiguous, their meaning becomes a question of fact, and the sentencing court's findings are reviewed for clear error. *United States v. Ricks*, 398 F. App'x 135, 137 (6th Cir. 2010) (citing *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002)).

In exchange for pleading guilty to tax fraud and wire fraud, the government, *inter alia,* agreed to recommend that Moore be granted a two-level reduction for acceptance of responsibility, pursuant to § 3E1.1(a), and an additional one-level reduction pursuant to § 3E1.1(b). However, the agreement provided that a conviction on the mail fraud charge could result in a recalculation of Moore's guidelines scores that would result in a higher aggregate sentence. The district court provided Moore with an opportunity to be sentenced separately for her tax and wire fraud convictions after entering a plea of guilty, which would have allowed her to receive the extra point

for acceptance of responsibility under § 3E1.1(b). She opted instead to proceed with an aggregate sentence on all three counts.

In imposing an aggregate sentence that encompassed all three counts, the district court found that the parties did not intend to require the United States to move for a third point for acceptance of responsibility at sentencing if Defendant did not prevail at trial. The plea agreement is ambiguous on this question, as the recalculation proviso does not directly address the effect the mail fraud conviction would have on the government's agreement to move for § 3E1.1(b) credit. However, the extrinsic evidence indicates that the government's obligation to move for a third-level reduction was contingent on Moore's acquittal on the mail fraud charge. The following colloquy between the court and Moore's counsel at sentencing provides insight into the parties' intent when they drafted the agreement:

> THE COURT: My understanding was that you weren't presuming her conviction.
>
> You were presuming her acquittal.
>
> MR. JACOBS: That's true.

(R. 142, PID #1143.) The court later stated, "that is an issue that was covered on [a] number of different sets of circumstances as the case had progressed. Had there been an acquittal, the three-level reduction . . . would have been to her favor. That was the calculation that she made . . . ." (*Id.* at PID #1145.)

Furthermore, the district court's finding that the parties did not intend that the Government would be required to move for acceptance of responsibility if Moore was convicted on the mail fraud count is consistent with this circuit's holding that "a defendant must accept responsibility for all counts before he is entitled to a reduction in sentence for acceptance of responsibility." *United States v. Chambers*, 195 F.3d 274, 278 (6th Cir. 1999). In order to receive a third-level reduction

7

under § 3E1.1(b), a defendant must qualify for a two-level reduction under § 3E1.1(a). Because Moore accepted responsibility for only two of the three counts in her aggregate sentence, she was not entitled to a § 3E1.1(b) credit. The fact that the government chose not to oppose a two-level reduction under § 3E1.1(a) in this case does not change the result.

Given this evidence, the trial court's factual finding that the parties intended that the government's obligation to move for a third-level reduction, under the plea agreement, to be contingent on Moore's acquittal for mail fraud does not leave this panel "with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### 2. Moore's Bond Violation

Because the district court did not err in its construction of the plea agreement, we do not reach the government's argument that Moore's bond violation provides an independent ground for affirming the district court. *United States v. Richardson*, 510 F.3d 622, 628 (6th Cir. 2007).

### IV. CONCLUSION

We affirm the district court's sentence.