**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0299n.06

**No. 18-5557**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 11, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| LARRY BROADNAX, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

---

**BEFORE:** GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Larry Broadnax pleaded guilty to four counts of drug trafficking and one count of conspiracy to commit money laundering. He received a below-Guidelines sentence of 262 months' imprisonment. On appeal, he argues that the district court erred by imposing Guidelines enhancements for (a) possessing a gun in connection with drug trafficking, and (b) maintaining premises for the purpose of manufacturing or distributing a controlled substance. Because the district court did not clearly err in finding that these enhancements apply, we **AFFIRM**.

## I. BACKGROUND

After a years-long FBI investigation, Broadnax was indicted for drug trafficking. He was charged with acquiring large quantities of narcotics from California and distributing them in the Memphis area. He pleaded guilty to conspiracy to possess with intent to distribute

methamphetamine, marijuana, cocaine, and oxycodone; he also pleaded guilty to conspiracy to commit money laundering and agreed not to contest criminal forfeiture. As part of the plea agreement, Broadnax and the Government agreed that he was responsible for between 3,000 and 10,000 kilograms of marijuana and marijuana equivalents, making his base offense level 32 under the Guidelines.

The parties did not come to an agreement, however, on sentencing enhancements and explicitly "reserve[d] the right to argue the applicability of enhancements at the sentencing hearing." At the hearing, two specific-offense enhancments to the Guidelines offense level were in dispute: one adding two levels for possessing a gun in connection with drug trafficking, USSG §2D1.1(b)(1), and one adding two levels for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance," USSG § 2D1.1(b)(12). A FBI agent, Thomas Barlow, testified in support of these two enhancements. After hearing Barlow's testimony and argument from the parties, the district court found that both two-level enhancments applied.

The court found that the gun-possession enhancement applied because Broadnax boasted of owning numerous guns on recorded phone calls and a firearm matching the description of one of these guns—a Taurus handgun—was "found in a room that appears to be the room that Mr. Broadnax [was] staying" in his mother's house. The court further found that it was not "clearly improbable that the weapon [was] connected to the offense" because "Mr. Broadnax talks about the weapon in the conversations with co-conspirators. He appears to be talking . . . in a way that makes it clear that he wants to be sure those who essentially he's in business with are able to protect themselves and have those weapons available to them."

Next, as to the premises enhancement, the district court found that "Broadnax controlled that address, that he had ready access to it, paid some of the bills connected to it, entered without

a key—or without knocking rather, so he had control of the premises." The court also found that there were three recorded conversations "over a relatively short time period," indicating that the property was being used to store and distribute drugs. The court "extrapolate[d] from that that there are probably other instances," observing that "[i]f it was three over a longer period of time, it might appear that this storage was more incidental or collateral, but because it's three over a shorter period of time, it leads to the conclusion that those premises are being used to store drugs . . . ."

Once the district court found that these two enhancements applied, and the government moved for Broadnax to be granted a three-level reduction for acceptance of responsibility, the court calculated Broadnax's adjusted offense level as 41.[1] Given Broadnax's criminal history category of I, that resulted in an advisory Guidelines range of 324 to 405 months' imprisonment. The court varied downwards because it believed that Broadnax was trying to provide for his family and this conspiracy did not involve the use of violence, imposing a sentence of 262 months' imprisonment. This timely appeal followed.

## II.  ANALYSIS

This court "review[s] a district court's calculation of the advisory sentencing Guidelines as part of our obligation to determine whether the district court imposed a sentence that is procedurally unreasonable. In doing so, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (citations and internal quotation marks omitted). The Government must prove by a preponderance of the evidence that a particular sentencing enhancement applies. *See id.* at 321.

---

[1] The adjusted offense level was 41 rather than 33 (*i.e.*, 32+2+2-3) because Broadnax did not and does not dispute that three additional Guidelines enhancements applied.

A.      **Gun-Possession Enhancement**

The enhancement for possessing a weapon during a drug-trafficking offense applies "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1). "The government must prove by a preponderance of the evidence 'that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense.'" *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003) (quoting *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir. 1998)). Once the government establishes "that a defendant was in possession of a firearm, the burden shifts to the defendant to establish that 'it is clearly improbable that the weapon was connected to the offense.'" *Id.* (quoting the commentary to USSG § 2D1.1). Further, "[a] district court's determination that a defendant possessed a firearm during a drug crime is a factual finding that this court reviews for clear error." *Id.* (quoting *Pruitt*, 156 F.3d at 649).

Broadnax argues that there "was no reliable evidence" that he had "either actual or constructive possession of a gun at any time during the drug trafficking conspiracy." Thus, "the [G]overnment failed to prove that Mr. Broadnax had a gun by the preponderance of the evidence." The Government responds that the district court's finding that the Taurus handgun belonged to Broadnax was not clearly erroneous because "the record supports a finding that Broadnax had constructive possession."

The Government has the better argument. There is support in the record for the district court's finding that the firearm found during a search of his mother's house was one of the guns Broadnax discussed on the recorded phone calls—he proclaimed his ownership of two Taurus handguns and the gun recovered was a 9-millimeter Taurus pistol. There is also some record support for the court's finding that this gun was discovered in Broadnax's bedroom: Agent Barlow testified that Broadnax was living in the house where the gun was found, paid some of the bills, and that the master bedroom where the gun was found contained items of clothing "consistent with

shoes and clothing that would be worn by Larry Broadnax." Barlow also testified that a purse belonging to Broadnax's mother was found in another bedroom, making him believe that it was her room. And, as a matter of law, Broadnax's dominion and control over his own bedroom is sufficient for a finding of constructive possession of the firearm. *See United States v. Johnson*, 658 F. App'x 236, 241 (6th Cir. 2016); *United States v. Hadley*, 431 F.3d 484, 507–08 (6th Cir. 2005).[2] Further, there is no evidence in the record indicating that it was clearly improbable that the gun was connected to the drug-trafficking conspiracy—nor does Broadnax argue otherwise. The court therefore did not clearly err in concluding that the § 2D1.1(b)(1) enhancement applied.

### B. Drug-Premises Enhancement

A two-level enhancement applies "[i]f the defendant maintained a premises for the purpose of manfuacturing or distributing a controlled substance." USSG § 2D1.1(b)(12). The commentary to the Guidelines specifies that "[a]mong the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." *Id.* § 2D1.1 comment. (n. 17). It further specifies:

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

*Id.*

---

[2] Broadnax argues that the recordings do not support a finding that he possessed this gun because he said he gave one Taurus to his mother and another to his girlfriend. But that statement does not preclude the possibility of joint possession of the firearm. *See Hadley*, 431 F.3d at 507 (noting that constructive possession "need not be exclusive but may be joint").

In this case, the drug-premises enhancement was imposed for a house occupied by Brodnax's girlfriend (and the mother of his child), Shalandria Jackson. Even though there was no evidence that Broadnax was the legal owner or renter of this property, he may still be found to maintain it "if the government makes a sufficient showing of de facto control." *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018) (citing *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010)). Evidence of maintenance can be shown by facts showing "control, duration, acquisition of the site, renting or furnishing the site, supervising, protecting, supplying food to those at the site, and maintaining continuity." *Id.* (alterations omitted) (quoting *Russell*, 595 F.3d at 644). Moreover, "[a]lthough a person need not be present at the location constantly for the enhancement to apply, the word *maintains* 'contemplates a defendant who is more than a casual visitor.'" *Id.* (quoting *United States v. Flores-Olague*, 717 F.3d 526, 532 (7th Cir. 2013)).

The evidence at the hearing established that Broadnax was seen at the house on a daily basis, that it was his primary residence for a period, and that he appeared to enter without knocking. As well, though the utilities were under the name of Jackson's mother, Broadnax paid at least some of the bills associated with this address. A different court might have concluded that this was insufficient to show that Broadnax controlled the premises given that he was not listed as the renter or owner of the house, the utilities were in someone else's name, and the government did not provide specifics about the bills Broadnax paid for this property—Agent Barlow said he "would just be guessing." Nonetheless, upon our review of the record, we are not left with "the definite and firm conviction that a mistake has been committed." *United States v. Myers*, 854 F.3d 341, 357 (6th Cir. 2017) (quoting *United States v. Sosebee*, 419 F.3d 451, 455 (6th Cir. 2005)). The district court therefore did not clearly err in finding that Broadnax maintained the premises.

This brings us to the next question—whether Broadnax maintained this property for the *purpose* of manufacturing or distributing a controlled substance. "One can maintain a premises for more than one purpose." *United States v. Bell*, 766 F.3d 634, 638 (6th Cir. 2014). Thus, this enhancement applies if a defendant maintains a house for the purposes of both living in it and using it for drug trafficking. *See id.* Here, Broadnax maintained the premises as a home for Jackson and their child. At issue is whether he also maintained it for the purpose of storing and distributing drugs or whether he only incidentally or collaterally used it for this purpose.

Though the evidence in this case is slighter than in *Bell*, where the defendant used his residence to cook crack and "had no job other than cooking crack cocaine and selling it," *id.* at 637–38, the record permits a finding that Broadnax maintained the premises for the purpose of drug trafficking. Broadnax told a caller on October 26, 2016, to come by Jackson's house to view pounds of marijuana stored there. On November 2, Broadnax directed two customers to Jackson's house and told her that one would pay her $3,500 while the other would pay her $7,000—notably, he often sold marijuana for $3,500 a pound. Then, on November 8, he again directed a customer to go to Jackson's house to look at a pound of marijuana. Given the volume of apparent drug activity at this location over a two-week period, it was not clear error to find that one of Broadnax's principal or primary purposes in maintaining the property was storing and distributing marijuana.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** Broadnax's sentence.